BENTON *v.* MARYLAND.

No. 201.   Argued December 12, 1968.—Reargued March 24, 1969.—
Decided June 23, 1969.

*M. Michael Cramer* argued the cause for petitioner on the original argument and on the reargument. With him on the briefs were *H. Thomas Sisk, Laurence Levitan,* and *Paul H. Weinstein.*

*Francis B. Burch,* Attorney General of Maryland, argued the cause for respondent on the reargument. With him on the briefs was *Edward F. Borgerding,* First Assistant Attorney General. *Mr. Borgerding* argued the cause for respondent on the original argument. With him on the brief was *Mr. Burch.*

*Peter L. Strauss* argued the cause for the United States on the reargument as *amicus curiae.* With him on the brief were *Solicitor General Griswold, Assistant Attorney General Wilson, Beatrice Rosenberg,* and *Ronald L. Gainer.*

MR. JUSTICE MARSHALL delivered the opinion of the Court.

In August 1965, petitioner was tried in a Maryland state court on charges of burglary and larceny. The jury found petitioner not guilty of larceny but convicted him on the burglary count. He was sentenced to 10 years in prison. Shortly after his notice of appeal was filed in the Maryland Court of Appeals, that court handed down its decision in the case of *Schowgurow* v. *State,* 240 Md. 121, 213 A. 2d 475 (1965). In *Schowgurow* the Maryland Court of Appeals struck down a section of the state constitution which required jurors to swear their belief in the existence of God. As a result of this decision, petitioner's case was remanded to the trial court.

Because both the grand and petit juries in petitioner's case had been selected under the invalid constitutional provision, petitioner was given the option of demanding re-indictment and retrial. He chose to have his conviction set aside, and a new indictment and new trial followed. At this second trial, petitioner was again charged with both larceny and burglary. Petitioner objected to retrial on the larceny count, arguing that because the first jury had found him not guilty of larceny, retrial would violate the constitutional prohibition against subjecting persons to double jeopardy for the same offense. The trial judge denied petitioner's motion to dismiss the larceny charge, and petitioner was tried for both larceny and burglary. This time the jury found petitioner guilty of both offenses, and the judge sentenced him to 15 years on the burglary count[1] and 5 years for larceny, the sentences to run concurrently. On appeal to the newly created Maryland Court of Special Appeals, petitioner's double jeopardy claim was rejected on the merits. 1 Md. App. 647, 232 A. 2d. 541 (1967). The Court of Appeals denied discretionary review.

On the last day of last Term, we granted certiorari, 392 U. S. 925 (1968), but limited the writ to the consideration of two issues:

> "(1) Is the double jeopardy clause of the Fifth Amendment applicable to the States through the Fourteenth Amendment?
>
> "(2) If so, was the petitioner 'twice put in jeopardy' in this case?"

---

[1] The increase in petitioner's sentence on the burglary count from 10 to 15 years is presently the subject of litigation on federal habeas corpus in the lower federal courts. A federal district court ordered the State to resentence petitioner, *Benton* v. *Copinger*, 291 F. Supp. 141 (D. C. Md. 1968), and an appeal brought by the State is presently pending in the United States Court of Appeals for the Fourth Circuit.

After oral argument, it became clear that the existence of a concurrent sentence on the burglary count might prevent the Court from reaching the double jeopardy issue, at least if we found that any error affected only petitioner's larceny conviction. Therefore, we scheduled the case for reargument, 393 U. S. 994 (1968), limited to the following additional question not included in the original writ:

> "Does the 'concurrent sentence doctrine,' enunciated in *Hirabayashi* v. *United States,* 320 U. S. 81, 105, and subsequent cases, have continuing validity in light of such decisions as *Ginsberg* v. *New York,* 390 U. S. 629, 633, n. 2, *Peyton* v. *Rowe,* 391 U. S. 54, *Carafas* v. *LaVallee,* 391 U. S. 234, 237–238, and *Sibron* v. *New York,* 392 U. S. 40, 50–58?"

The Solicitor General was invited to file a brief expressing the views of the United States and to participate in oral argument.

After consideration of all the questions before us, we find no bar to our decision of the double jeopardy issue. On the merits, we hold that the Double Jeopardy Clause of the Fifth Amendment is applicable to the States through the Fourteenth Amendment, and we reverse petitioner's conviction for larceny.

## I.

At the outset of this case we are confronted with a jurisdictional problem. If the error specified in the original writ of certiorari were found to affect only petitioner's larceny conviction,[2] reversal of that conviction would not require the State to change the terms of

---

[2] See Part V, *infra.* Of course, if the error infected both counts upon which petitioner was convicted, there would be no concurrent sentence problem at all. We do not, however, resolve the question of whether the burglary conviction was "tainted."

petitioner's confinement. Whatever the status of his sentence on the larceny conviction, petitioner would probably stay in prison until he had served out his sentence for burglary.[3]  Is there, in these circumstances, a live "case" or "controversy" suitable for resolution by this Court, or is the issue moot?  Is petitioner asking for an advisory opinion on an abstract or hypothetical question?  The answer to these questions is crucial, for it is well settled that federal courts may act only in the context of a justiciable case or controversy.  *Muskrat* v. *United States,* 219 U. S. 346 (1911); see *Flast* v. *Cohen,* 392 U. S. 83, 94–97 (1968).

The language used in a number of this Court's opinions might be read to indicate that the existence of a valid concurrent sentence removes the necessary elements of a justiciable controversy.  The "concurrent sentence doctrine" took root in this country quite early, although its earliest manifestations occurred in slightly different contexts.  In *Locke* v. *United States,* 7 Cranch 339 (1813), a cargo belonging to the plaintiff in error had been condemned under a libel containing 11 counts.  Chief Justice John Marshall, speaking for the Court, found it unnecessary to consider Locke's challenges to all 11 counts. He declared, simply enough, "The Court however, is of opinion, that the 4th count is good, and this renders it unnecessary to decide on the others." *Id.,* at 344. Similar reasoning was later applied in a case where a single general sentence rested on convictions under several counts of an indictment.  Drawing upon some English cases and some dicta from Lord Mansfield,[4] the Court in *Claassen* v. *United States,* 142 U. S. 140, 146

---

[3] The length of that sentence is presently a matter in dispute, see n. 1, *supra.*

[4] *Grant* v. *Astle,* 2 Doug. 722, 99 Eng. Rep. 459 (1781); *Peake* v. *Oldham,* 1 Cowp. 275, 98 Eng. Rep. 1083 (1775); *Rex* v. *Benfield,* 2 Burr. 980, 97 Eng. Rep. 664 (1760).

(1891), held that if the defendant had validly been convicted on any one count "the other counts need not be considered." The most widely cited application of this approach to cases where concurrent sentences, rather than a single general sentence, have been imposed is *Hirabayashi* v. *United States,* 320 U. S. 81 (1943). In that case the defendant had been found guilty of two different offenses and had received concurrent three-month sentences. He challenged the constitutionality of both convictions, but this Court affirmed the lower court's judgment after considering and rejecting only one of his challenges. Since the conviction on the second count was valid, the Court found it "unnecessary" to consider the challenge to the first count. *Id.,* at 85, 105.

The concurrent sentence doctrine has been widely, if somewhat haphazardly, applied in this Court's decisions. At times the Court has seemed to say that the doctrine raises a jurisdictional bar to the consideration of counts under concurrent sentences. Some opinions have baldly declared that judgments of conviction "must be upheld" if any one count was good. *Barenblatt* v. *United States,* 360 U. S. 109, 115 (1959); see *United States* v. *Gainey,* 380 U. S. 63, 65 (1965). In other cases the Court has chosen somewhat weaker language, indicating only that a judgment "may be affirmed if the conviction on either count is valid." *Roviaro* v. *United States,* 353 U. S. 53, 59, n. 6 (1957). And on at least one occasion, the Court has ignored the rule entirely and decided an issue that affected only one count, even though there were concurrent sentences. *Putnam* v. *United States,* 162 U. S. 687 (1896).

One can search through these cases, and related ones, without finding any satisfactory explanation for the concurrent sentence doctrine. See *United States* v. *Hines,* 256 F. 2d 561, 562–563 (C. A. 2d Cir. 1958). But whatever the underlying justifications for the doc-

trine, it seems clear to us that it cannot be taken to state a jurisdictional rule. See *Yates* v. *United States,* 355 U. S. 66, 75–76 (1957); *Putnam* v. *United States, supra.* Moreover, whatever may have been the approach in the past, our recent decisions on the question of mootness in criminal cases make it perfectly clear that the existence of concurrent sentences does not remove the elements necessary to create a justiciable case or controversy.

In *Sibron* v. *New York,* 392 U. S. 40 (1968), we held that a criminal case did not become moot upon the expiration of the sentence imposed. We noted "the obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences." *Id.,* at 55. We concluded that the mere possibility of such collateral consequences was enough to give the case the "impact of actuality" which was necessary to make it a justiciable case or controversy. *Sibron* and a number of other recent cases have canvassed the possible adverse collateral effects of criminal convictions,[5] and we need not repeat that analysis here. It is enough to say that there are such possibilities in this case. For example, there are a few States which consider all prior felony convictions for the purpose of enhancing sentence under habitual criminal statutes, even if the convictions actually constituted only separate counts in a single indictment tried on the same day.[6] Petitioner might some day in one of these States have both his larceny and burglary convictions counted against him. Although this possibility

---

[5] *Street* v. *New York,* 394 U. S. 576, 579–580, n. 3 (1969); *Carafas* v. *LaVallee,* 391 U. S. 234, 237–238 (1968); *Ginsberg* v. *New York,* 390 U. S. 629, 633–634, n. 2 (1968).

[6] The majority rule is, apparently, that all convictions handed down at the same time count as a single conviction for the purpose of habitual offender statutes, but a few States follow the stricter rule described in the text. The relevant cases are collected at 24 A. L. R. 2d 1262–1267 (1952), and in the accompanying supplements.

may well be a remote one, it is enough to give this case an adversary cast and make it justiciable. Moreover, as in *Sibron,* both of petitioner's convictions might some day be used to impeach his character if put in issue at a future trial. Although petitioner could explain that both convictions arose out of the same transaction, a jury might not be able to appreciate this subtlety.

We cannot, therefore, say that this Court lacks jurisdiction to decide petitioner's challenge to his larceny conviction. It may be that in certain circumstances a federal appellate court, as a matter of discretion, might decide (as in *Hirabayashi*) that it is "unnecessary" to consider all the allegations made by a particular party.[7] The concurrent sentence rule may have some continuing validity as a rule of judicial convenience. That is not a subject we must canvass today, however. It is sufficient for present purposes to hold that there is no jurisdictional bar to consideration of challenges to multiple convictions, even though concurrent sentences were imposed.

## II.

While Maryland apparently agrees that there is no jurisdictional bar to consideration of petitioner's larceny conviction, it argues that the possibility of collateral consequences is so remote in this case that any double jeopardy violation should be treated as a species of "harmless error." The Solicitor General, while not commenting at length on the facts of this particular case,

---

[7] In *Sibron* we noted the inadequacies of a procedure which postpones appellate review until it is proposed to subject the convicted person to collateral consequences. 392 U. S., at 56–57. For the reasons there stated, an attempt to impose collateral consequences after an initial refusal to review a conviction on direct appeal because of the concurrent sentence doctrine may well raise some constitutional problems. That issue is not, however, presented by this case, and accordingly we express no opinion on it.

suggests that we treat the concurrent sentence doctrine as a principle of judicial efficiency which permits judges to avoid decision of issues which have no appreciable impact on the rights of any party. Both Maryland and the Solicitor General argue that the defendant should bear the burden of convincing the appellate court of the need to review all his concurrent sentences. Petitioner, on the other hand, sees in *Sibron* a command that federal appellate courts treat all errors which may possibly affect a defendant's rights, and he argues that the concurrent sentence rule therefore has no continuing validity, even as a rule of convenience.

Because of the special circumstances in this case, we find it unnecessary to resolve this dispute. For even if the concurrent sentence doctrine survives as a rule of judicial convenience, we find good reason not to apply it here. On direct appeal from petitioner's conviction, the Maryland Court of Special Appeals did in fact rule on his double jeopardy challenge to the larceny count. 1 Md. App., at 650–651, 232 A. 2d, at 542–543. It is unclear whether Maryland courts always consider all challenges raised on direct appeal, notwithstanding the existence of concurrent sentences,[8] but at least in this case the State decided not to apply the concurrent sentence rule. This may well indicate that the State has some interest in keeping the larceny conviction alive; [9] if, as Maryland argues here, the larceny conviction is of no importance to either party, one wonders why the state courts found it necessary to pass on it. Since the future importance of the conviction may well turn on issues of state law about which we are not well informed, we propose, on direct appeal from the Maryland courts, to accept their judgment on this question. Since

---

[8] Compare *Meade* v. *State,* 198 Md. 489, 84 A. 2d 892 (1951), with *Marks* v. *State,* 230 Md. 108, 185 A. 2d 909 (1962).

[9] See n. 7, *supra.*

they decided this federal constitutional question, we see no reason why we should not do so as well. Moreover, the status of petitioner's burglary conviction and the eventual length of his sentence are both still in some doubt.[10] Should any attack on the burglary conviction be successful, or should the length of the burglary sentence be reduced to less than five years, petitioner would then clearly have a right to have his larceny conviction reviewed. As we said in *Sibron* v. *New York, supra,* at 56–57, it is certainly preferable to have that review now on direct appeal, rather than later.[11] For these reasons, and because there is no jurisdictional bar, we find it appropriate to reach the questions specified in our original writ of certiorari.

### III.

In 1937, this Court decided the landmark case of *Palko* v. *Connecticut,* 302 U. S. 319. Palko, although indicted for first-degree murder, had been convicted of murder in the second degree after a jury trial in a Connecticut state court. The State appealed and won a new trial. Palko argued that the Fourteenth Amendment incorporated, as against the States, the Fifth Amendment requirement that no person "be subject for the same offence to be twice put in jeopardy of life or limb." The Court disagreed. Federal double jeopardy standards were not applicable against the States. Only when a kind of jeopardy subjected a defendant to "a hardship so acute and shocking that our polity will not endure it," *id.,* at 328, did the Fourteenth Amendment apply. The order

---

[10] See n. 1, *supra,* and Part V, *infra.*

[11] A stronger case for total abolition of the concurrent sentence doctrine may well be made in cases on direct appeal, as compared to convictions attacked collaterally by suits for post-conviction relief. Because of our disposition of this case, we need not reach this question.

for a new trial was affirmed. In subsequent appeals from state courts, the Court continued to apply this lesser *Palko* standard. See, *e. g., Brock* v. *North Carolina*, 344 U. S. 424 (1953).

Recently, however, this Court has "increasingly looked to the specific guarantees of the [Bill of Rights] to determine whether a state criminal trial was conducted with due process of law." *Washington* v. *Texas*, 388 U. S. 14, 18 (1967). In an increasing number of cases, the Court "has rejected the notion that the Fourteenth Amendment applies to the States only a 'watered-down, subjective version of the individual guarantees of the Bill of Rights . . . .' " *Malloy* v. *Hogan*, 378 U. S. 1, 10–11 (1964).[12] Only last Term we found that the right to trial by jury in criminal cases was "fundamental to the American scheme of justice," *Duncan* v. *Louisiana*, 391 U. S. 145, 149 (1968), and held that the Sixth Amendment right to a jury trial was applicable to the States through the Fourteenth Amendment.[13] For the same reasons, we today find that the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment. Insofar as it is inconsistent with this holding, *Palko* v. *Connecticut* is overruled.

*Palko* represented an approach to basic constitutional rights which this Court's recent decisions have rejected. It was cut of the same cloth as *Betts* v. *Brady*, 316 U. S. 455 (1942), the case which held that a criminal defendant's right to counsel was to be determined by deciding in each case whether the denial of that right was "shocking to the universal sense of justice." *Id.,* at 462. It

---

[12] Quoting from *Ohio ex rel. Eaton* v. *Price*, 364 U. S. 263, 275 (1960) (opinion of BRENNAN, J.).

[13] A list of those Bill of Rights guarantees which have been held "incorporated" in the Fourteenth Amendment can be found in *Duncan, supra,* at 148.

relied upon *Twining* v. *New Jersey,* 211 U. S. 78 (1908), which held that the right against compulsory self-incrimination was not an element of Fourteenth Amendment due process. *Betts* was overruled by *Gideon* v. *Wainwright,* 372 U. S. 335 (1963); *Twining,* by *Malloy* v. *Hogan,* 378 U. S. 1 (1964). Our recent cases have thoroughly rejected the *Palko* notion that basic constitutional rights can be denied by the States as long as the totality of the circumstances does not disclose a denial of "fundamental fairness." Once it is decided that a particular Bill of Rights guarantee is "fundamental to the American scheme of justice," *Duncan* v. *Louisiana, supra,* at 149, the same constitutional standards apply against both the State and Federal Governments. *Palko*'s roots had thus been cut away years ago. We today only recognize the inevitable.

The fundamental nature of the guarantee against double jeopardy can hardly be doubted. Its origins can be traced to Greek and Roman times, and it became established in the common law of England long before this Nation's independence.[14] See *Bartkus* v. *Illinois,* 359 U. S. 121, 151–155 (1959) (BLACK, J., dissenting). As with many other elements of the common law, it was carried into the jurisprudence of this Country through the medium of Blackstone, who codified the doctrine in his Commentaries. "[T]he plea of *autrefoits acquit,* or a former acquittal," he wrote, "is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offence." [15] Today, every State incorporates some form of the prohibition in its constitution or common law.[16] As this Court put it in *Green* v. *United States,* 355 U. S. 184, 187–188 (1957), "[t]he underlying

---

[14] J. Sigler, Double Jeopardy 1–37 (1969).

[15] 4 W. Blackstone, Commentaries *335.

[16] Sigler, *supra,* n. 14, at 78–79; *Brock* v. *North Carolina,* 344 U. S. 424, 435, n. 6 (1953) (Vinson, C. J., dissenting).

idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." This underlying notion has from the very beginning been part of our constitutional tradition. Like the right to trial by jury, it is clearly "fundamental to the American scheme of justice." The validity of petitioner's larceny conviction must be judged, not by the watered-down standard enunciated in *Palko,* but under this Court's interpretations of the Fifth Amendment double jeopardy provision.

## IV.

It is clear that petitioner's larceny conviction cannot stand once federal double jeopardy standards are applied. Petitioner was acquitted of larceny in his first trial. Because he decided to appeal his burglary conviction, he is forced to suffer retrial on the larceny count as well. As this Court held in *Green* v. *United States, supra,* at 193–194, "[c]onditioning an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy."

Maryland argues that *Green* does not apply to this case because petitioner's original indictment was absolutely void. One cannot be placed in "jeopardy" by a void indictment, the State argues. This argument sounds a bit strange, however, since petitioner could quietly have served out his sentence under this "void" indictment had he not appealed his burglary conviction. Only by accepting the option of a new trial could the in-

dictment be set aside; at worst the indictment would seem only voidable at the defendant's option, not absolutely void. In any case, this argument was answered here over 70 years ago in *United States* v. *Ball,* 163 U. S. 662 (1896). In that case Millard Fillmore Ball was indicted, together with two other men, for the murder of one William T. Box in the Indian Territory. He was acquitted and his codefendants were convicted. They appealed and won a reversal on the ground that the indictment erroneously failed to aver the time or place of Box's death. All three defendants were retried, and this time Ball was convicted. This Court sustained his double jeopardy claim, notwithstanding the technical invalidity of the indictment upon which he was first tried. The Court refused to allow the Government to allege its own error to deprive the defendant of the benefit of an acquittal by a jury. *Id.,* at 667–668. "[A]lthough the indictment was fatally defective, yet, if the court had jurisdiction of the cause and of the party, its judgment is not void, but only voidable by writ of error . . . ," and the Government could not have the acquittal set aside over the defendant's objections. *Id.,* at 669–670. This case is totally indistinguishable. Petitioner was acquitted of larceny. He has, under *Green,* a valid double jeopardy plea which he cannot be forced to waive. Yet Maryland wants the earlier acquittal set aside, over petitioner's objections, because of a defect in the indictment. This it cannot do. Petitioner's larceny conviction cannot stand.

## V.

Petitioner argues that his burglary conviction should be set aside as well. He contends that some evidence, inadmissible under state law in a trial for burglary alone, was introduced in the joint trial for both burglary and larceny, and that the jury was prejudiced by this evi-

dence.[17]  This question was not decided by the Maryland
Court of Special Appeals because it found no double
jeopardy violation at all.  It is not obvious on the face
of the record that the burglary conviction was affected
by the double jeopardy violation.  To determine whether
there is in fact any such evidentiary error, we would have
to explore the Maryland law of evidence and the Mary-
land definitions of larceny and burglary, and then exam-
ine the record in detail.  We do not think that this is
the kind of determination we should make unaided by
prior consideration by the state courts.[18]  Accordingly,
we think it "just under the circumstances," 28 U. S. C.
§ 2106, to vacate the judgment below and remand for
consideration of this question.  The judgment is vacated
and the case is remanded for further proceedings not
inconsistent with this opinion.

*It is so ordered.*

Mr. Justice White, concurring.

While I agree with the Court's extension of the pro-
hibition against double jeopardy to the States, and with
the Court's conclusion that the concurrent sentence rule
constitutes no jurisdictional bar, additional comment on
the wisdom and effects of applying a concurrent sentence
rule seems appropriate.

In a time of increasingly congested judicial dockets,
often requiring long delays before trial and upon appeal,

---

[17] There is no danger here that the jury might have been tempted
to compromise on a lesser charge because of an erroneous retrial on
a greater charge.  See *United States ex rel. Hetenyi* v. *Wilkins,* 348
F. 2d 844, 866 (C. A. 2d Cir. 1965), cert. denied, *sub nom. Mancusi*
v. *Hetenyi,* 383 U. S. 913 (1966).  Larceny is a lesser offense than
burglary.

[18] See Note, Individualized Criminal Justice in the Supreme Court:
A Study of Dispositional Decision Making, 81 Harv. L. Rev. 1260,
1272–1273 (1968).

judicial resources have become scarce. Where a man has been convicted on several counts and sentenced concurrently upon each, and where judicial review of one count sustains its validity, the need for review of the other counts is not a pressing one since, regardless of the outcome, the prisoner will remain in jail for the same length of time under the count upheld. Rather than permit other cases to languish while careful review of these redundant counts is carried to its futile conclusion, judicial resources might be better employed by moving on to more pressing business. This is not a rule of convenience to the judge, but rather of fairness to other litigants.

This is not to say, however, that the fact of conviction under the unreviewed counts could never be of importance to the prisoner. After his release it is possible they might be used against him in a recidivism prosecution, or used to impeach his testimony in a trial for another offense, to pick two obvious examples. Nevertheless, the unreviewed counts are, by hypothesis, not of immediate importance to his confinement, and our experience gives us no indication that they are frequently of such importance later that the concurrent sentence rule should not be applied.

The unreviewed count is often one which, but for the concurrent sentence rule, the prisoner would have a right to challenge, either directly or on collateral attack. Arguably, to deny him that right when another man, convicted after a separate trial on each count, or sentenced consecutively, could not be denied that right under the applicable state or federal law, raises an equal protection question. But clearly so long as the denied review is of no significance to the prisoner the denial of equal protection is not invidious but only theoretical.

But should a situation arise in which the convict can demonstrate that the unreviewed count is being used

against him, so as to work some harm to him additional to that stemming from the reviewed count, his grievance becomes real. At that point it may be that the unreviewed count may not be used against him, unless it is determined that the lack of earlier review can be cured by then supplying the convict the review to which he would earlier have been entitled but for his concurrent sentence on another count. For myself, postponed review, a question which the Court reserves (*ante,* at 791, n. 7), presents no insuperable difficulties. Appellate review is always conducted on a cold record, and collateral proceedings frequently deal with a stale record and stale facts. There is nothing inherently unfair in permitting the record to become colder while it is irrelevant to any human need, and other litigants' demands are more pressing. Whether reversal on such a record, after delayed review, would permit retrial or a hearing on a claim involving, for example, a coerced confession, is yet a further question which there is no present need to address. Should a satisfactory hearing or retrial prove impossible this would be an unfortunate byproduct of an initially crowded docket.

For the foregoing reasons, I agree with the Court that the concurrent sentence rule, while not of jurisdictional dimensions, should be preserved as a matter of proper judicial administration both on direct appeal and collateral attack, although at least in theory it raises a number of questions concerning the subsequent effects of the unreviewed counts. It may be that where it can be reliably predicted in a particular case that each count would entail concrete prejudicial consequences at a later date, the appellate court at the time of initial review would prefer to deal with all counts rather than to apply the concurrent sentence rule.

MR. JUSTICE HARLAN, whom MR. JUSTICE STEWART joins, dissenting.

One of the bedrock rules that has governed, and should continue to govern, the adjudicative processes of this Court is that the decision of constitutional questions in the disposition of cases should be avoided whenever fairly possible. Today the Court turns its back on that sound principle by refusing, for the flimsiest of reasons, to apply the "concurrent sentence doctrine" so as not to be required to decide the far-reaching question whether the Double Jeopardy Clause of the Fifth Amendment is "incorporated" into the Due Process Clause of the Fourteenth, thereby making the former applicable lock, stock, and barrel to the States. Indeed, it is quite manifest that the Court has actually been at pains to "reach out" to decide that very important constitutional issue.

I consider that the concurrent sentence doctrine is applicable here, and that dismissal of the writ is accordingly called for. Despite that, I feel constrained also to express my views on the merits because of what I conceive to be the importance of the constitutional approach at stake.

## I.

The Court decides, and I agree, that petitioner's larceny conviction is not moot, and that the concurrent sentence doctrine is not a *jurisdictional* bar to entertainment of challenges to multiple convictions, so long as the convictions sought to be reviewed are not moot. However, I would also emphasize, in agreement with the position of the Government as *amicus curiae,* that the concurrent sentence rule does have continuing vitality as an element of judicial discretion, and that appellate courts may decline to review a conviction carrying a concurrent sentence when another "concurrent" convic-

tion has been reviewed and found valid and the unreviewed conviction foreseeably will have no significant adverse consequences for the appellant. As the Solicitor General has pointed out, the concurrent sentence doctrine plays a significant role in conserving the time and energy of appellate courts.[1] To require that these already overworked courts[2] invariably review in full detail each of several convictions carrying concurrent sentences seems to me senselessly doctrinaire.[3]

## A.

As has been noted, the concurrent sentence doctrine is applicable only if there exists a valid concurrent conviction. In this instance, petitioner's double jeopardy argument is directed to his larceny conviction, but he claims that the concurrent sentence doctrine is no impediment to reaching that question because his concurrent, and otherwise valid, burglary conviction was tainted by having been tried together with the larceny count. It is therefore necessary to consider whether this claim of taint has merit.

The Court finds that resolution of the taint issue is likely to involve such difficult points of Maryland law as to make a remand to the Maryland courts the soundest course. See *ante,* at 797–798. However, my examination

---

[1] See Memorandum for the United States as Amicus Curiae 20–23. Counsel for the Government estimated during oral argument that the concurrent sentence doctrine is employed in the disposition of about 10% of all federal criminal appeals.

[2] See, *e. g.,* Carrington, Crowded Dockets and the Courts of Appeals: The Threat to the Function of Review and the National Law, 82 Harv. L. Rev. 542 (1969).

[3] Like the Court, see *ante,* at 791, n. 7, I express no view on the question whether collateral consequences may constitutionally be imposed on account of a conviction which was denied review on direct appeal because of the concurrent sentence doctrine.

of the question convinces me that the pertinent Maryland law is quite elementary. And, unlike the Court, I am not deterred by the prospect of having to "examine . . . in detail," *ante,* at 798, the 42-page record of petitioner's second trial.

I conclude that there was no real possibility of taint. Burglary in Maryland consists of breaking and entering any dwelling house in the nighttime with intent to steal, take, or carry away the personal goods of another. See Md. Code Ann., Art. 27, § 30 (a) (1967). Larceny in Maryland is a common-law crime, consisting of the taking and carrying away of the personal property of another with intent to deprive the owner of the property permanently. See, *e. g., Fletcher* v. *State,* 231 Md. 190, 189 A. 2d 641 (1963). Evidence was introduced at petitioner's second trial to show that he not only entered a locked house at night but also made off with several household appliances. The latter evidence was, of course, pertinent to the larceny count. However, it was also plainly relevant to the burglary count, since it tended to show intent to steal.

Petitioner bases his taint argument primarily on the proposition that he was entitled to have the evidence concerning the missing appliances excluded from his second trial under the doctrine of "collateral estoppel," he having been acquitted of larceny at the first trial. However, even if it is assumed that the conviction on the larceny count was bad on double jeopardy or due process grounds and that the principle of collateral estoppel has some application to state criminal trials through the Due Process Clause of the Fourteenth Amendment,[4] I think that the doctrine would not prevent

---

[4] This Court said in dictum in *Hoag* v. *New Jersey,* 356 U. S. 464, 471 (1958): "Despite its wide employment, we entertain grave doubts whether collateral estoppel can be regarded as a constitutional

admission of the evidence on the issue of burglary. The principle of collateral estoppel makes conclusive, in collateral proceedings, only those matters which were "actually litigated and determined in the original action . . . ." *Cromwell* v. *County of Sac,* 94 U. S. 351, 353 (1877).[5] The Maryland Constitution provides:

> "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction." Md. Const., Art. 15, § 5.

Hence, petitioner's acquittal of larceny at his first trial may have rested solely upon that jury's unique view of the *law* concerning that offense, and cannot be taken as having necessarily "determined" any particular question of fact.

It follows from what has been said in this section that there can be no estoppel effect in a collateral proceeding, such as petitioner's second trial for burglary, and that petitioner's taint argument must fail.[6]

---

requirement. Certainly this Court has never so held." See also *id.,* at 470–471; *Sealfon* v. *United States,* 332 U. S. 575 (1948); *United States* v. *Oppenheimer,* 242 U. S. 85, 88 (1916).

[5] See also Restatement, Judgments § 68 (1).

[6] The Court also suggests that the concurrent sentence doctrine should not be applied for the additional reason that the eventual length of petitioner's burglary sentence is "still in some doubt." See *ante,* at 793. Petitioner received a 10-year sentence following his first burglary conviction and a 15-year sentence after his second conviction. The latter sentence was subsequently vacated and resentencing ordered by a federal district court. See *Benton* v. *Copinger,* 291 F. Supp. 141 (1968). The State has appealed. Whatever the outcome of that appeal, I consider that the probability of petitioner's burglary sentence being reduced below five years, so as to make the concurrent sentence doctrine inoperative, is manifestly negligible.

## B.

Since petitioner's second burglary conviction was not tainted by his simultaneous trial for larceny, it is necessary to consider whether the concurrent sentence doctrine is inapplicable for the other possible reason: that petitioner foreseeably will suffer significant adverse consequences on account of his larceny conviction.[7]

No such consequences can reasonably be predicted. The Court itself notes that only a "few States" would allow petitioner's larceny conviction to be used against him for purposes of sentencing as a habitual offender, and concedes that "this possibility may well be a remote one." *Ante,* at 790–791. When it is recalled that petitioner had been convicted of three felonies even prior to his present burglary conviction,[8] this possibility is reduced to the vanishing point.[9]

There remain the possibilities that petitioner's larceny conviction might be considered generally by a judge if and when petitioner is sentenced following some future conviction, and that the conviction might be used to impeach him in future judicial proceedings. In the circumstances of this case, these potential consequences are plainly insignificant. Petitioner's burglary and larceny convictions were based upon the very same series of acts on his part. This fact could readily be brought to the attention either of a sentencing judge or of a trier of fact before whom petitioner was sought to be impeached. Predictably, knowledge of the identical origin of the two convictions would reduce the extra impact of the

---

[7] Cf., *e. g., Sibron* v. *New York,* 392 U. S. 40, 55–56 (1968).

[8] See Supplementary Brief for Respondent 20, n. 6.

[9] So far as I have been able to discover, there is no State in which petitioner's larceny conviction could have habitual offender consequences.

larceny conviction to negligible proportions. Thus, it would be difficult to imagine a case in which a "concurrent" conviction would be likely to entail fewer adverse consequences.

### C.

The Court nonetheless holds that "[b]ecause of the special circumstances in this case" it will not apply the concurrent sentence doctrine, and that it is unnecessary even to decide whether the doctrine has "continuing validity, even as a rule of convenience." See *ante,* at 792. One of the "special circumstances" cited by the Court is the existence of the "taint" issue, which the Court finds it desirable to remand to the state courts. As has been noted, I can perceive no difficulties which would justify a remand.

The second of the "special circumstances" relied on by the Court is that "in this case the [state courts] decided not to apply the concurrent sentence rule" and reached the "double jeopardy" issue themselves. See *ante,* at 792. The Court concludes that "[s]ince [the Maryland courts] decided this federal constitutional question, we see no reason why we should not do so as well." See *ante,* at 792–793. This reasoning baffles me. In determining whether or not to reach a constitutional issue the decision of which is not absolutely necessary to the disposition of a case, this Court has long been guided by the rule that "[w]here a case . . . can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued and is not departed from without important reasons." *Siler* v. *Louisville & N. R. Co.,* 213 U. S. 175, 193 (1909); see *Ashwander* v. *TVA,* 297 U. S. 288, 345 (1936) (Brandeis, J., concurring). In deciding whether such "important reasons" exist, this Court has never regarded itself as bound to reach the constitutional issue merely because the court below did so, and has often declined to pass

upon constitutional questions even though fully canvassed by the lower court.[10] On some of these occasions, the Court has relied in justification upon the concurrent sentence doctrine.[11]

Since I cannot believe that the Court wishes as a general matter to abandon the salutary and well-established principle of declining to rule on constitutional questions in advance of necessity, and since I find the "taint" issue entirely free of the complexities which the Court claims to perceive, I cannot help but conclude that the real reason for reaching the "double jeopardy" issue in this case is the Court's eagerness to see that provision "incorporated" into the Fourteenth Amendment and thus made applicable against the States.

#### D.

As has been shown, this case satisfies both preconditions to application of the concurrent sentence doctrine. Reliance upon that doctrine would enable the Court to avoid decision of a substantial constitutional question. Accordingly, I would apply the concurrent sentence rule and decline to review petitioner's larceny conviction. Since the case was brought here on a writ of certiorari limited to the "double jeopardy" question, decision of which would affect only the larceny conviction, I would dismiss the writ as improvidently granted.

#### II.

Having concluded that the writ should be dismissed, I would ordinarily not go further. However, as indicated at the outset, I feel impelled to continue with

---

[10] See, *e. g.*, *Cichos* v. *Indiana*, 385 U. S. 76 (1966); *Hamm* v. *City of Rock Hill*, 379 U. S. 306 (1964); *Bell* v. *Maryland*, 378 U. S. 226 (1964); *Machinists* v. *Street*, 367 U. S. 740 (1961); *Rice* v. *Sioux City Cemetery*, 349 U. S. 70 (1955).

[11] See, *e. g.*, *United States* v. *Gainey*, 380 U. S. 63 (1965); *Barenblatt* v. *United States*, 360 U. S. 109 (1959).

some observations respecting what can only be regarded as a complete overruling of one of this Court's truly great decisions, and with an expression of my views as to how petitioner's claim respecting his retrial for larceny should fare under the traditional due process approach.

## A.

I would hold, in accordance with *Palko* v. *Connecticut,* 302 U. S. 319 (1937), that the Due Process Clause of the Fourteenth Amendment does not take over the Double Jeopardy Clause of the Fifth, as such. Today *Palko* becomes another casualty in the so far unchecked march toward "incorporating" much, if not all, of the Federal Bill of Rights into the Due Process Clause. This march began, with a Court majority, in 1961 when *Mapp* v. *Ohio,* 367 U. S. 643, was decided and, before the present decision, found its last stopping point in *Duncan* v. *Louisiana,* 391 U. S. 145 (1968), decided at the end of last Term. I have at each step in the march expressed my opposition, see, *e. g.,* my opinions in *Mapp* v. *Ohio, supra,* at 672 (dissenting); *Ker* v. *California,* 374 U. S. 23, 44 (1963) (concurring in result); *Malloy* v. *Hogan,* 378 U. S. 1, 14 (1964) (dissenting); *Pointer* v. *Texas,* 380 U. S. 400, 408 (1965) (concurring in result); *Griffin* v. *California,* 380 U. S. 609, 615 (1965) (concurring); *Klopfer* v. *North Carolina,* 386 U. S. 213, 226 (1967) (concurring in result); and *Duncan* v. *Louisiana, supra,* at 171 (dissenting); more particularly in the *Duncan* case I undertook to show that the "selective incorporation" doctrine finds no support either in history or in reason.[12] Under the pressures of the closing days of

[12] In the interest of strict accuracy, it should be pointed out that MR. JUSTICE STEWART cannot and does not fully join in the above sentence of this opinion. He joined my dissenting opinion in *Duncan* v. *Louisiana, supra,* but wrote a separate memorandum in *Mapp* v. *Ohio, supra,* at 672; joined the opinion of Mr. Justice Clark in *Ker* v. *California, supra;* joined MR. JUSTICE WHITE's dissenting

the Term, I am content to rest on what I have written in prior opinions, save to raise my voice again in protest against a doctrine which so subtly, yet profoundly, is eroding many of the basics of our federal system.

More broadly, that this Court should have apparently become so impervious to the pervasive wisdom of the constitutional philosophy embodied in *Palko,* and that it should have felt itself able to attribute to the perceptive and timeless words of Mr. Justice Cardozo nothing more than a "watering down" of constitutional rights, are indeed revealing symbols of the extent to which we are weighing anchors from the fundamentals of our constitutional system.

### B.

Finally, how should the validity of petitioner's larceny conviction be judged under *Palko,* that is, under due process standards?

A brief recapitulation of the facts first seems advisable. Petitioner was indicted and tried simultaneously for burglary and larceny. He was acquitted of larceny but convicted of burglary. Petitioner appealed, and the Maryland courts remanded in light of earlier Maryland decisions holding invalid a provision of the Maryland Constitution requiring that grand and petit jurors declare their belief in God. Petitioner was given the option either of accepting the result of his trial or of demanding re-indictment and retrial. He chose to attack the indictment, was re-indicted and retried for both larceny and burglary, and was convicted of both offenses.

The principle that an accused should not be tried twice for the same offense is deeply rooted in Anglo-American

---

opinion in *Malloy* v. *Hogan, supra,* at 33; wrote an opinion concurring in the result in *Pointer* v. *Texas, supra,* at 409; wrote a dissenting opinion in *Griffin* v. *California, supra,* at 617; and separately concurred in the result in *Klopfer* v. *North Carolina, supra,* at 226.

law.[13]   In this country, it is presently embodied in the Fifth Amendment to the Federal Constitution and in the constitution or common law of every State.[14]   The *Palko* Court found it unnecessary to decide "[w]hat the answer would have to be if the state were permitted after a trial free from error to try the accused over again or to bring another case against him . . . ."   302 U. S., at 328. However, I have no hesitation in stating that it would be a denial of due process at least for a State to retry one previously acquitted following an errorless trial. The idea that the State's interest in convicting wrong-doers is entirely satisfied by one fair trial ending in an acquittal, and that the accused's interest in repose must thereafter be given precedence, is indubitably a " 'principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' "   *Id.,* at 325.

The situation in this case is not quite so simple.   Had petitioner not appealed his burglary conviction, the State would surely have allowed him to rest on his larceny acquittal and merely serve out his burglary sentence. However, the State argues that the burglary and larceny counts were originally contained in a single indictment; that upon petitioner's appeal the indictment was declared totally void and the trial court found to have lacked jurisdiction; and that the State could then proceed as if there had never been a previous indictment or trial.

The State's contention that petitioner's first trial was a complete nullity because the trial court "lacked juris-

---

[13] The "double jeopardy" concept has been an established part of the English common law since at least 1700, and was contained in the constitutions or common law of many American jurisdictions prior to 1787.   See J. Sigler, Double Jeopardy 1–37 (1969); *Bartkus* v. *Illinois,* 359 U. S. 121, 151–155 (1959) (BLACK, J., dissenting).

[14] See Sigler, *supra,* at 77–117.

diction" is unconvincing. As has been noted, it appears that the State would willingly have seen petitioner serve out the burglary sentence imposed in consequence of that trial. Under state procedure, petitioner could avail himself of the "jurisdictional" defect only by appealing his conviction. The crucial issue, therefore, is what legitimate interest had the State in compelling petitioner to jeopardize his larceny acquittal as a condition of appealing his burglary conviction?

I can perceive no legitimate state interest. Certainly it is the purest fiction to say that by appealing his burglary conviction petitioner "waived" his right not to be retried for larceny or "consented" to retrial on that charge. The notion of "waiver" was first employed in *United States* v. *Ball,* 163 U. S. 662 (1896), to justify retrial of an accused for the same offense following reversal of a conviction on appeal. The "waiver" doctrine was more fully articulated in *Trono* v. *United States,* 199 U. S. 521 (1905), where it was held that retrial and conviction for murder following a successful appeal from a manslaughter conviction did not violate the Double Jeopardy Clause.[15] *Trono* apparently dictated the result in *Brantley* v. *Georgia,* 217 U. S. 284 (1910), in which the Court held in a brief *per curiam,* without citing any authority, that a Georgia retrial and conviction for murder following the reversal on appeal of an earlier manslaughter conviction did not amount to "a case of twice in jeopardy under any view of the Constitution of the United States." *Id.,* at 285.[16] We have since

---

[15] In the federal realm, the *Trono* decision was, of course, limited to its "peculiar factual setting" by *Green* v. *United States,* 355 U. S. 184, 197 (1957), in which I joined the dissenting opinion of Mr. Justice Frankfurter, *id.,* at 198. MR. JUSTICE STEWART was not a member of the Court at the time *Green* was decided.

[16] *Trono* was the only federal decision cited by the State of Georgia in its brief in *Brantley.*

recognized that the "waiver" rationale is a "conceptual abstraction" which obscures rather than illuminates the underlying clash of societal and individual interests. See *United States* v. *Tateo,* 377 U. S. 463, 466 (1964). Accordingly, I do not think that the reasoning in *Trono* or the apparent holding in *Brantley,* insofar as they would require affirmance of petitioner's larceny conviction, can any longer be regarded as good law.

Nor did the State in the present case have the sorts of interests which have been held to justify retrial for the same offense after a conviction has been reversed on appeal by the accused and in the more unusual case when an acquittal has been set aside following an appeal by the State.[17] When the accused has obtained a reversal on appeal, the societal interest in convicting the guilty has been deemed too weighty to permit every such accused to be "granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *United States* v. *Tateo, supra,* at 466. The rationale for allowing the State to appeal an acquittal has been that the State, like the accused, is entitled to assure itself of a trial "free from the corrosion of substantial legal error" which might have produced an adverse verdict. See *Palko* v. *Connecticut, supra,* at 328.[18]

---

[17] For more detailed analyses of these interests, see generally Mayers & Yarbrough, *Bis Vexari:* New Trials and Successive Prosecutions, 74 Harv. L. Rev. 1 (1960); Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L. J. 606 (1965); Comment, Twice in Jeopardy, 75 Yale L. J. 262 (1965); Note, Double Jeopardy: The Reprosecution Problem, 77 Harv. L. Rev. 1272 (1964).

[18] However, in the federal system it has been held that the Government may not appeal from an acquittal without placing the accused "a second time in jeopardy for the same offense." *Kepner* v. *United States,* 195 U. S. 100, 133 (1904). See also *id.,* at 134–137 (Holmes, J., dissenting).

In the present case, the State did not appeal, and the defect in the composition of the grand jury could not have affected petitioner's subsequent acquittal at trial. Society's legitimate interest in punishing wrongdoers could have been fully vindicated by retrying petitioner on the burglary count alone, that being the offense of which he was previously convicted. The State had no more interest in compelling petitioner to stand trial again for larceny, of which he had been acquitted, than in retrying any other person declared innocent after an error-free trial. His retrial on the larceny count therefore, in my opinion, denied due process, and on that ground reversal would be called for under *Palko*.