STATE OF NEBRASKA, APPELLEE, v. DUANE POPE, APPELLANT.
184 N. W. 2d 395

Filed February 26, 1971. No. 37661.

Robert B. Crosby and Wallace M. Rudolph, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

The district court found defendant Duane Pope guilty on three counts of murder in the first degree. It imposed the penalty of death. On appeal Pope contends that the court erred in overruling his plea of double jeopardy.

The three counts, each naming a different victim, arose from the same conduct which had led to a federal indictment of Pope. Three federal counts charged that (1) Pope on June 4, 1965, had shot and killed the three victims and (2) at the time he had been robbing Farmers State Bank, a federally insured bank at Big Springs, Nebraska. In a federal trial on Pope's pleas of not guilty a jury found him guilty on all counts. It directed punishment by death. Judge Van Pelt, the trial judge, imposed a sentence of death on each of the three counts.

Affirmance of the judgment in Pope v. United States, 372 F. 2d 710 (8th Cir., en banc, 1967) (opinion by Blackmun, J.), was vacated in Pope v. United States, 392 U. S. 651, 88 S. Ct. 2145, 20 L. Ed. 2d 1317 (1968). The vacation rested on a concession that the death penalty provision, Title 18 U. S. C., section 2113(e), like the one in the Federal Kidnapping Act, Title 18 U. S. C., section 1201(a), was unconstitutional. See United States v. Jackson, 390 U. S. 570, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968). The case was remanded to the district court for resentencing. Pope v. United States, 397 F. 2d 812 (8th Cir., 1968). On remand Judge Van Pelt in December 1968 resentenced Pope to life imprisonment on each but one of the three counts and to 99 years on the other. The judgment was affirmed. Pope v. United States, 434 F. 2d 325 (8th Cir., 1970).

In the state prosecution on four consolidated informations Pope pleaded not guilty and not guilty by reason of insanity or mental derangement. Trial of issues of guilt was had to the court on the record of testimony at the federal trial, counsel reserving rights to certain ob-

jections. A summary of the evidence at the federal trial appears in Judge Blackmun's opinion for the circuit court.

The double jeopardy clause of the Fifth Amendnment to the Constitution of the United States is applicable to the states through the Fourteenth Amendment. Benton v. Maryland, 395 U. S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). It does not prohibit successive prosecutions by federal and state governments in the exercise of concurrent jurisdiction over substantially the same offense. See Abbate v. United States, 359 U. S. 187, 79 S. Ct. 666, 3 L. Ed. 2d 729 (1959); Bartkus v. Illinois, 359 U. S. 121, 79 S. Ct. 676, 3 L. Ed. 2d 684 (1959); United States v. Synnes, —— F. 2d —— (8th Cir., 1971). Protection of our brand of federalism has necessitated a conservative interpretation of double jeopardy.

Those successive prosecutions are not prohibited by the double jeopardy clause of the Constitution of Nebraska, Article I, section 12. Cf. Marshall v. State, 6 Neb. 120 (1877).

The constitutional provisions set minimum limits. They do not prevent Nebraska fixing higher standards by statute or in the absence of statute, by judicial decision. Cf. Marshall v. State, *supra*. No Nebraska statute bars this prosecution of Pope.

We express no opinion on effects of a former finding of not guilty upon this doctrine of dual sovereignty. Reasons in the name of federalism sustaining a prosecution after a conviction may lose all force when the first prosecution ends in a finding of not guilty. See, Miller, Double Jeopardy and the Federal System, p. 63 (1968); Comments, 75 Yale L. J. 262 (1965); 65 Yale L. J. 339 (1956); Note, 80 Harv. L. Rev. 1538 at 1563 (1967).

Penal sanctions which ideally ought to be scaled may be considered a technique for general deterrence of crime. See, Andenaes, "The General Preventive Effects of Punishment," 114 U. Pa. L. Rev. 949 (1966); Report, Royal Commission on Capital Punishment (1949 to 1953).

Prejudices for or against capital punishment have no place here. The point is this: Whether at common law a federal conviction bars prosecution by the State of Nebraska for substantially the same offense in instances of concurrent jurisdiction depends upon vindication of the public policy of Nebraska. Cf. Marshall v. State, *supra;* Miller, Double Jeopardy and the Federal System, pp. 24, 130, 131 (1968). The disparity between maximum punishments prescribed by the United States and Nebraska for the offenses in question is too great; conviction of Pope under the federal statute did not vindicate the public policy of Nebraska. Cf. Abbate v. United States, *supra;* Bartkus v. Illinois, *supra.*

Pope, age 22 and a college graduate, planned for weeks to rob that bank, to use an automatic pistol equipped with a homemade silencer, to kill everyone in the bank; to commit the perfect crime. The evidence fully supports the findings and sentence of death by the state district court on each of the three counts against Pope. Remaining issues, some of which relate to other counts, are resolved against Pope.

The judgments are affirmed. The sentence of death imposed by the district court shall be carried into execution between 12:01 o'clock a.m. and 11:59 o'clock p.m. on Friday, June 25, 1971.

AFFIRMED.

McCown, J., dissenting.

I respectfully dissent. A rigid view of the doctrines involved in our brand of federalism dictates the result expressed in the majority opinion. It expresses no opinion on the effects of a former finding of not guilty upon the doctrine of dual sovereignty. That situation is distinguished from a former finding of guilt and fixing of punishment. The majority justify a second prosecution after a valid former conviction and sentence on the ground that it is a "vindication of the public policy of Nebraska."

The ancient Latin maxim of the common law was

translated: "No one can be twice punished for the same crime or misdemeanor." In the early days of this country, the Supreme Court expressed its understanding of the doctrine of former jeopardy. "The common law not only prohibited a second punishment for the same offense, but it went further and forbid a second trial for the same offense, whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted." Ex parte Lange, 85 U. S. (XVIII Wall.) 163 at page 169, 21 L. Ed. 872.

There can be little question that at common law no one could be twice punished for the same offense whether the former trial was by the same jurisdiction or not. The dual sovereignty doctrine emerged as a protection of our distinctive brand of federalism. It is ironic that the federalism inspired by a desire for constitutional guarantees of the rights of individuals should itself provide the reasons for disregarding its own guarantees against double jeopardy.

There have been clear indications that the doctrinal bases of Bartkus v. Illinois, 359 U. S. 121, 79 S. Ct. 676, 3 L. Ed. 2d 684, have been substantially undercut and practically overruled. See, for example, Malloy v. Hogan, 378 U. S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653; Griffin v. California, 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106; Benton v. Maryland, 395 U. S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707; Murphy v. Waterfront Commission of New York, 378 U. S. 52, 84 S. Ct. 1594, 12 L. Ed. 2d 678.

In the case before us, the punishment imposed by the federal court amounted to three life sentences for all practical purposes. It is beyond any dispute, therefore, that the prosecuting authority of Nebraska regards death as the only sufficient punishment in this case. The final punishment meted out by the federal court has been deemed insufficient. That sort of interpretation of the doctrine of dual sovereignty puts the federal and state governments in the position of competing with

each other. Each branch of government determines whether the punishment meted out by the other branch of government shall be deemed sufficient and whether the protection against double jeopardy and punishment shall be granted or withheld. That determination rests with the prosecutor and stems from an interpretation of public policy, not from the Constitution nor from the common law.

The public policy of Nebraska ought not to be "vindicated" at the expense of fundamental and traditional concepts of former jeopardy and due process. Common law protections against double jeopardy and punishment, as well as constitutional provisions, ought not to be ignored to justify and preserve a competitive policy of retribution and punishment under our unique form of federal democracy.