STATE OF NEBRASKA, APPELLEE, v. DUANE POPE, APPELLANT.
211 N. W. 2d 923

Filed November 9, 1973. No. 38945.

Wallace M. Rudolph and Robert B. Crosby, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

PER CURIAM.

This is the second appearance of this case in this court. On the former appeal, this court affirmed the conviction of the defendant, Duane Pope, on three counts of murder in the first degree, on which the death penalty was imposed. See State v. Pope, 186 Neb. 489, 184 N. W. 2d 395. The current appeal follows the resentencing of the defendant Pope following the vacation of the state death sentence by the United States Supreme Court. See Pope v. Nebraska, 408 U. S. 933, 92 S. Ct. 2870, 33 L. Ed. 2d 745.

The three murder counts in this state prosecution, each naming a different victim, arose from the same conduct which had led to a federal indictment and conviction of Pope. The three corresponding federal counts charged that: (1) On June 4, 1965, Pope shot and killed the three victims, and (2) at the time he was robbing Farmers State Bank, a federally insured bank at Big Springs, Nebraska. Pope was found guilty by a federal jury and the United States District Court imposed a death sentence on each of the three counts. Following appeal to the United States Supreme Court, the death

sentence was vacated and the cause remanded to the United States District Court for resentencing. On remand, that court resentenced Pope to life imprisonment on two of the three counts and to 99 years on the other, the sentences to run concurrently. The judgment was affirmed. Pope v. United States, 434 F. 2d 325 (8th Cir., 1970). Pope is now in the custody of the United States serving those federal sentences.

Meanwhile, in 1969, the Nebraska state prosecution of Pope was commenced in the District Court for Deuel County. Jury trial was waived and trial was had to the court on November 5, 1969, under a stipulation that "the testimony, evidence and exhibits to be offered by the prosecution and the defense shall be the same testimony, evidence and exhibits that were offered and received at the trial of this defendant in the United States District Court."

On January 29, 1970, the District Court found Pope guilty on all counts and sentenced him to death on each of the three murder counts. On appeal to this court, the judgment of the District Court was affirmed. See State v. Pope, supra. On appeal to the United States Supreme Court, that court vacated the sentences "insofar as it leaves undisturbed the death penalty imposed" and remanded the cause for further proceedings. Pope v. Nebraska, 408 U. S. 933, 92 S. Ct. 2870, 33 L. Ed. 2d 745.

Upon remand, the District Court for Deuel County resentenced Pope to three life sentences on the three murder counts, the sentences to run consecutively, and all sentences to begin after the federal sentences are served.

Although the defendant has reargued the double jeopardy issues under the provisions of the United States and Nebraska Constitutions, this court specifically held in its former opinion that the double jeopardy clauses of the United States and Nebraska Constitutions do not prohibit successive prosecutions by federal and Nebraska governments in the exercise of concurrent jurisdic-

tion over substantially the same offense. We also held that the constitutional double jeopardy provisions set minimum limits. They do not prevent Nebraska from fixing higher standards by statute or, in the absence of statute, by judicial decision. This court adheres to those determinations.

This court also held that at common law, where there is concurrent jurisdiction over substantially the same offense, the determination of whether a federal conviction bars prosecution by Nebraska depends upon vindication of the public policy of the State. We held that the disparity between a life sentence and a death sentence was sufficiently great that the conviction and sentencing of Pope under the federal statute did not vindicate the public policy of Nebraska.

The thrust of defendant's argument on this appeal is that since the Nebraska death penalty was vacated by the United States Supreme Court, and only life sentences as a maximum are now available for either the federal or state prosecutions, there is no longer any reason or public policy to vindicate the action of Nebraska in imposing a second punishment for the same conduct. The basis for defendant's argument on this issue rests on the common law as opposed to the constitutional double jeopardy guaranties. Defendant contends that this state has adopted the common law doctrine which prohibited a second punishment for the same offense and that section 83-1,106, R. R. S. 1943, indicates clearly the policy of the state not to punish persons twice for the same conduct. That section provides in part: "(1) Credit against the maximum term and any minimum term may be given * * * to an offender for time spent in custody as a result of the conduct on which such a charge is based.

"(2) Credit against the maximum term and any minimum term may be given to an offender for time spent in custody under a prior sentence if he is later reprosecuted and resentenced for the same offense or for an-

other offense based on the same conduct. In the case of such a reprosecution, this may include credit in accordance with subsection (1) of this section for time spent in custody as a result of both the original charge and any subsequent charge for the same offense or for another offense based on the same conduct."

This statute clearly does not prohibit a second trial for offenses arising out of the same conduct. Neither does it specifically indicate any direct federal-state application. Nevertheless, it does clearly articulate a policy that persons should only be punished once for any particular illegal conduct. The policy reflected by the statute, while not mandatory, is simply the more specific articulation of the common law principles expressed in 1877 in Marshall v. State, 6 Neb. 120. That case was cited three times in our prior opinion. In 1877, this court said in Marshall: "And if a man offends against two governmental powers, which equally bind him, it is not easy to see why 'his paying the penalty of the law to one power should relieve him from liability to pay the penalty of the law to the other power. Still, though the strict rule of the law would be so, yet as a sort of merciful dispensation the courts would undoubtedly consider favorably to the defendant the fact, if it existed, that he had been punished for the same act in a foreign country.' But it seems that in order to make such punishment for the act in a foreign country a satisfaction and a bar to a future trial, upon the ground above stated, it is necessary that 'it should be complete and should have been executed to its full extent.'"

Where there is concurrent jurisdiction over substantially the same offense and the public policy of the State requires vindication, then in order to make federal punishment for the act a satisfaction and bar to state trial and sentence, it is necessary that the federal sentence should be complete and should have been executed to its full extent.

The public policy of Nebraska in this case transparently reflects the intent to inflict the maximum penalty allowed by law, life imprisonment, and to have that penalty executed to its full extent. Here it demands that Pope be imprisoned for all his natural life. If the federal sentences were executed to their full extent, that policy of Nebraska would be vindicated. If the federal sentences were not fully executed, vindication of that policy would require the return of the defendant to state custody to fully execute the Nebraska sentences. The sentences are affirmed.

AFFIRMED.

McCOWN, J., dissenting.

I emphatically reaffirm my dissent as expressed in the former appeal in this case. State v. Pope, 186 Neb. 489, at p. 492, 184 N. W. 2d 395, at p. 397. Its validity is reinforced by the current decision.

The majority opinion now holds in effect that there is no such thing as constitutionally prohibited double jeopardy where the two prosecutions are by the United States on the one hand and a "sovereign" state on the other. Not only does the opinion deny the application of the constitutional doctrine of both federal and state constitutions, but it also denies the application of the correlative common law doctrine.

· The justification is rested upon a vindication of the public policy of the State of Nebraska. Although phrased in other terms, the obvious state policy now to be vindicated is to retain the right to decide whether the punishment inflicted by the United States is sufficient to satisfy the state. Not only does state public policy apparently require vindication where there is a disparity between maximum punishments prescribed by the United States and Nebraska for an offense but it now requires vindication even though the maximum punishments prescribed and actually inflicted are identical and multiple. The state's sovereignty now extends even to insuring that the federal sentences are executed and en-

forced in the fashion the state deems appropriate.

The position expressed in the majority opinion not only nullifies the constitutional and common law doctrines of double jeopardy and double punishment; it also puts the United States and Nebraska in the position of competing with each other to establish their respective sovereignties. Each "sovereign" determines whether the punishment meted out by the other "sovereign" should be deemed sufficient, and whether the protections against double jeopardy and double punishment shall be granted or withheld. That determination rests upon the sole discretion of a prosecutor, and not upon fundamental and traditional concepts of due process and equal protection of the law. The protection of constitutional and common law guaranties against double jeopardy and double punishment "ought not to be ignored to justify and preserve a competitive policy of retribution and punishment under our unique form of federal democracy."

SMITH, J., dissenting in part.

The life sentences under review preserve the right of the State of Nebraska to determine whether Duane Pope will ever become eligible for parole. That interest of the state would also be protected by a modification of the sentences as follows: We would credit Pope for time served under the federal sentences, and the state sentences would run concurrently.

The majority opinion may go too far in choking the spirit, if not the letter of constitutional, legislative, and administrative policies of parole. See, Art. IV, sec. 13, Constitution of Nebraska (1972); § 83-192(1), R. R. S. 1943; § 83-1,110, R. S. Supp., 1973. It is enough for me that modification of the sentences in the above respects would vindicate the public interest of the state. I therefore dissent.

SPENCER, J., dissenting in part.

I join the partial dissent of Judge Smith. I agree that the life sentences under review preserve the right of the State of Nebraska to determine whether Duane Pope

will ever become eligible for parole. I, therefore, disagree with the dissent of Judge McCown that double jeopardy or the correlative common law doctrine are violated. In State v. Pope, 186 Neb. 489, 184 N. W. 2d 395, we passed on the validity of the Nebraska prosecution. The sole issue presented for our determination herein is whether Pope can be resentenced. I emphatically concur with the majority determination concerning that issue.

I would credit Pope for the time served under the federal sentences, and provide that the state sentences would run concurrently. I cannot believe that any future parole board would consider parole herein without fully reviewing the planned elimination of all possible witnesses. If ever a case required the death penalty, this one is it.