Marvin PHILLIPS, Petitioner-Appellant,

v.

Peter J. PITCHESS, Sheriff, Respondent-Appellee.

No. 26394.

United States Court of Appeals,
Ninth Circuit.

Nov. 10, 1971.

Rehearing Denied Dec. 20, 1971.

John R. Sheehan (argued), Burbank, Cal., Frank O. Walther (argued), Haverford, Pa., for petitioner-appellant.

Russell Iungerich (argued), Evelle J. Younger, Cal. Atty. Gen., Los Angeles, Cal., for respondent-appellee.

Before BARNES, BROWNING and TRASK, Circuit Judges.

BARNES, Circuit Judge:

This is an appeal from an order denying and dismissing appellant's petition for a writ of habeas corpus.

We are satisfied that the appeal has no merits. We adopt the carefully prepared and reasoned order of the District Court Judge as the opinion of this Court. It is appended hereto and made a part hereof as Exhibit "A".

The judgment is affirmed, except that rejection of petitioner's fifth contention is affirmed only on the ground that petitioner failed to exhaust his state court remedies.

EXHIBIT "A"

United States District Court

Central District of California

United States of America ex rel
Marvin Phillips,

*Petitioner,*

vs.

Peter J. Pitchess, Sheriff, Los Angeles County, California,

*Respondent.*

No. 69–1376–FW

[March 24, 1970]

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DISMISSING ACTION

Petitioner is a state court prisoner who was convicted of second degree murder and now seeks a writ of habeas corpus. The grounds upon which he bases his petition are: (1) that he was placed in double jeopardy when he was tried the second time for the same offense; (2) that he was denied his right

to counsel of his own choice; (3) that the petit jury was unconstitutionally selected; (4) that he was denied his right to cross-examination of the witnesses against him under the Sixth and Fourteenth Amendments to the Constitution when the trial court allowed at the second trial the reading of the transcript of two persons who had testified at petitioner's first trial on the same charge and who were not present at his second trial; (5) that the grand jury which returned the indictment against petitioner was unconstitutionally organized; and (6) that the evidence supporting the conviction was insufficient in that it rested solely on the testimony of a single doctor belonging to a hostile school of medicine to that which petitioner belongs.

A summary of the facts surrounding the crime and conviction of petitioner, a doctor of chiropractic, follow. The victim, Linda Epping, was an eight year old child. She developed a lump above her eye which caused her parents to take her to a doctor who referred them to Dr. Leavelle who in turn suggested she be referred to U.C.L.A. Medical Clinic. Her parents consulted with Dr. Straatsma at U.C.L.A.; he, after a biopsy, diagnosed the tumor as a cancerous growth of the eye which was of the fast developing type. Her parents were advised that a radical operation involving the removal of the eye and surrounding tissue, including the lid, was necessary to treatment. After considerable hesitation the parents agreed to the operation to be performed at U.C.L.A. Medical Center and it was scheduled for July 24, 1961. On July 21, 1961, Linda's parents were referred to petitioner, a chiropractor, who advised Linda's parents that he could cure Linda of cancer without surgery. The treatment consisted of massive doses of pills (124 per day), iodine and water, nutritional supplements, enemas, and massaging of the feet. (Rep. Tr. pp. 610, 628, 630, 631.) Her parents paid petitioner $500.00 as a fee and more than $200.00 for medicines and pills. He advised Linda's parents not to allow the operation. (Rep. Tr. p. 578.) Thus, Linda's parents were induced by petitioner's promises and representations to forego the operation. (Rep. Tr. p. 636.) He told her parents that it was not necessary to have a biopsy performed. He said that there was a machine that could detect cancer. (Rep. Tr. p. 585.) He also told Linda's parents that if you cut into a cancer it would only spread to other parts of the body. (Rep. Tr. p. 586.) When the growth continued to grow, Mrs. Epping called Dr. Phillips and he advised her that when they had reached the right amount of one particular medicine that he was giving her then the growth would dissolve. (Rep. Tr. p. 601.) During the middle of the treatment he said there was a chance Linda might have to go to a hospital to have a conservative doctor remove the eye but that it was not necessary at that time. (Rep. Tr. p. 603.) Sometime in the beginning of the treatment petitioner told Mrs. Epping how the nerve tissue of the eye was somehow connected to the underside of the feet, and he demonstrated how to manipulate Linda's feet as a part of the treatment. (Rep. Tr. p. 609.) He also told Mrs. Epping that it would get a lot worse before it would get better; that he was trying to reach a fever of 103, 104 degrees. (Rep. Tr. p. 630.) Linda was treated by petitioner from July 22, 1961, to August 13, 1961, at which time her cancer and general condition had worsened so much that her parents abandoned petitioner and his treatment and sought other methods. Linda died December 29, 1961. Expert testimony was in substance that petitioner's treatment was worthless (Rep. Tr. p. 372) and that the lack of, or delay in, the operation hastened Linda's death by a minimum of two months. (Rep. Tr. pp. 362–363, 475.)

■ (1) Petitioner's contention that he was placed twice in jeopardy for the same offense is totally without any merit. Petitioner was convicted of second degree murder on September 4, 1962. His appeal to the California Dis-

trict Court of Appeal was successful and the conviction was reversed because of an erroneous jury instruction. Petitioner was retried and convicted of second degree murder. It is this second trial which petitioner contends violated the constitutional protection against being placed twice in jeopardy for the same offense. His reliance on Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, and Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, is completely misplaced. Neither of these cases has application to petitioner's case since they each involve an implied or actual acquittal. In the *Green* case, an implied acquittal of a greater offense when the defendant was first convicted of a lesser included offense precluded retrial on the greater offense. In Benton v. Maryland, the defendant was acquitted of larceny and convicted of burglary at the first trial. On retrial he was found guilty of both. The Supreme Court held that double jeopardy prohibition of the Fifth Amendment is enforceable against the states through the Fourteenth Amendment and that conditioning the right of appeal on one offense by requiring a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy. These cases stand merely for the proposition that a defendant cannot be placed in jeopardy for a second time for an offense of which he was once acquitted. This does not prevent a retrial on the precise offense of which he was once convicted and as to which he waived the double jeopardy bar when he appealed and where such conviction was reversed by a higher court. Petitioner was first convicted of second degree murder. His successful appeal and the reversal did not prevent a retrial for second degree murder.

■ (2) Petitioner's contention that his right to counsel was unconstitutionally abridged is without merit. Petitioner was tried and convicted in 1962 of murder in the second degree. He was represented by private counsel at that trial. An appeal was successful; the conviction was reversed; and petitioner was retried in 1967. It is petitioner's contention that the lengthy first trial and subsequent appeal rendered him indigent, and that this lack of funds made it impossible for him to secure private counsel of his own choosing immediately for the second trial; and that he was therefore in a position where he had no choice but to be represented by the public defender until October 1967. At that time he contends a fund was made available for his defense; he then requested the court to discharge the public defender and to substitute Mr. Abrahams as his attorney. This motion was denied by the court. It is this denial which petitioner contends deprived him of his right to counsel of his own choice.

The factual background supporting the trial court's denial of petitioner's motion to substitute counsel and for continuance on the eve of the trial is as follows. The first trial and conviction was reversed and the remittitur came down in May 1966. The two attorneys of record, Mr. Belli and Mr. Brody, were, in one of the subsequent initial proceedings, relieved as counsel. On September 1, 1966, almost 14 months before the denial of petitioner's motion to substitute Mr. Abrahams, defendant made a motion to continue the trial setting so that he could secure counsel. On September 22, 1966, on motion of defendant, Mr. J. Hughes was relieved as counsel for defendant and Mr. M. S. Keith was substituted as counsel. The matter was continued to December 21, 1966. On December 21, 1966, Mr. George Bock was associated as attorney of record with Maxwell S. Keith. The matter was continued to January 6, 1967.

On January 6, 1967, the matter was continued for trial until April 18. On April 14, four days before the trial date, the matter was advanced. Mr. Keith was relieved as counsel. The matter was continued to the trial date of April 18, 1967. On that date the matter was continued to May 9 for trial. On May 9,

1967, attorney Bock was relieved as attorney for petitioner. The public defender was then appointed. The matter was continued to May 16, 1967, for trial setting.

On May 16, 1967, the matter of trial setting was set for September 5, 1967. On September 5, 1967, the matter was transferred to Department 1 for assignment for trial. On that date the petitioner's motion for a continuance was denied. Due to a congested calendar the commencement of the trial was continued to October 23, 1967. On the date set for trial the petitioner's first motion for a substitution of counsel of Mr. Abrahams was made and denied. At the hearing on October 23 Judge Alaroon asked attorney Abrahams if he was ready for trial. Mr. Abrahams stated, "I'm not prepared. I haven't looked at the file." Mr. Gessler, the deputy public defender appointed and assigned to defend petitioner in May 1967, stated to the court that he was prepared for trial. Mr. Abrahams answered the judge's query concerning late notification of petitioner's desire for substitution with, "Well, it's just the feeling of Dr. Phillips at this time he does want another counsel." In view of the complexity of the case and the length of the prior trial, it would be anticipated that the trial would take a month and would require considerable time in preparation. It had already been over a year since the remittitur and petitioner had been granted more than ample time through continuances to secure counsel of his own choosing. The public defender was prepared to defend him and there was and has been no showing that the public defender was not competent to represent petitioner. The trial judge found after the close of all of the evidence that the deputy public defender had done a superlative job as attorney up to that point. (Rep. Tr. p. 913.) This Court has read the reporter's transcript of petitioner's trial proceedings and determines that the trial judge's said finding is amply supported by the evidence. 28 U.S.C. § 2254(d). The record makes clear that the denial of the motion for a continuance and substitution of counsel made at a time when the trial was ready to commence, after many previous continuances had been granted to allow petitioner an opportunity to obtain counsel, was a sound exercise of judicial discretion. The motion for substitution was again made and denied at the continued date for trial (October 31, 1967) for the same reasons. The court at that time spelled out the many continuances and substitutions of counsel and made a proper exercise of discretion in again denying the motion. It appears from the record that the motion for substitution of attorneys contemplated that the court would grant a further continuance of the trial; the corporation suggesting that a fund was being set up for the defense of petitioner assumed that a continuance would be granted so that Abrahams could prepare for trial. (Supp. Rep. Tr. p. 4, Exhibit B.) A continuance was in fact requested by Abrahams because of a pending petition for writ of prohibition based on the argument of double jeopardy. (Supp.Rep.Tr. pp. 7–8, Exhibit B.) Further, there was no assurance that attorney Abrahams would have continued representation of petitioner to and including the trial even if substitution had been permitted. (Supp.Rep.Tr. p. 4, Exhibit B.) There was no evidence then presented that there were funds immediately available for his representation of petitioner; the representation was merely that a fund was being set up. There was no assurance that sufficient moneys would have been raised. (Supp. Rep.Tr. p. 4, Exhibit B.)

■ (3) Petitioner's third ground for relief is that the prosecuting attorney wrongfully used the statutory right of peremptory challenges to potential jurors to deny the constitutional right to an impartial jury by systematically excluding by such peremptory challenge all prospective trial jurors who "even remotely knew a chiropractor." Petitioner lists as an example the names of nine prospective jurors who were on the panel and their respective connections with

a chiropractor. It is unnecessary to consider the legal issue raised by this contention of whether a defendant's right to a fair and impartial jury is subject to denial by the peremptory challenge process, because here the petitioner's contention is completely unfounded factually. A review of the reporter's supplemental transcript on appeal (Exhibit C) indicates, with respect to the nine jurors whom petitioner names in his petition as having been excluded by peremptory challenge of the prosecution, that two of those listed served on the jury, and that another one, Roy Teeter, was the subject of a peremptory challenge by the defendant. (Supp.Rep.Tr. p. 162, Exhibit C.) Teeter stated on voir dire that he had gone to a chiropractor. (Supp.Rep.Tr. p. 110, Exhibit C.) Grace Hendricks stated on voir dire that she had been a patient of a chiropractor (Supp.Rep.Tr. p. 130, Exhibit C) and Jackie Brinkmeyer stated on voir dire that he might have gone to a chiropractor once (Supp.Rep.Tr. p. 86, Exhibit C) and that his wife was a patient of a chiropractor. (Supp.Rep.Tr. p. 87, Exhibit C.) Brinkmeyer served as the foreman of the jury rendering the verdict, and Hendricks served as a member of such jury. (Rep.Tr. p. 1345.) In addition, one juror not mentioned by petitioner, a Mr. Jack E. Hollis, stated on voir dire that he may have been to a chiropractor (Supp.Rep.Tr. p. 148); he also served on the jury. Thus, the record makes clear that there were on the jury three jurors who stated during voir dire that they had some connection with a chiropractor, thus there is no merit in fact to petitioner's contentions regarding the petit jury.

(4) Petitioner's contention that he was deprived of his right to be confronted by the witnesses against him and to cross-examine them at his trial is without merit. He relies on Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L. Ed.2d 255, to support his position. The testimony of two witnesses at petitioner's first trial was read into the record at the second trial. The first witness, Diana Johnson, was shown by the evidence taken by the court out of the presence of the jury to be out of the jurisdiction and unavailable to testify at the second trial. An investigator for the district attorney testified that arrangements had been made to bring her from Las Vegas, Nevada, to Los Angeles so that she might testify. She was at the time pregnant and her physician prohibited travel beyond a certain stage in her pregnancy, November 1, 1967. (Rep.Tr. p. 312.) Because of the many continuances of the trial date, by the time the second trial commenced she was at such an advanced stage of pregnancy that she was unable to safely travel. Thus, the prosecution had laid sufficient foundation to satisfy the constitutional requirements of Barber v. Page, *supra.* The petitioner offered no testimony on the out of jury hearing concerning this point, but his counsel merely stated, "Submit it, your honor." (Rep.Tr. p. 319.) Thus, the reading of her testimony from the former trial to the effect that two and one-half years earlier the petitioner had undertaken to cure her of a skin mole was proper. Furthermore, her testimony was very brief. She testified that Dr. Phillips, petitioner, treated her for a mole on her back (Rep.Tr. p. 347) and that he told her to take pills for the mole. (Rep.Tr. p. 348.) Her testimony was merely cumulative to a small portion of the testimony of her mother, Mrs. Leona Fontenot, who in addition testified that petitioner told her the mole was cancerous; petitioner told her it was not necessary to see a specialist and that he would prescribe pills. (Rep.Tr. p. 230.) Thus, the testimony of Diana Johnson independently added nothing to the testimony against petitioner; and even if the admission of such testimony had been error, it is clear that such error would be harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705.

The testimony of Dr. Brock was read into the record by stipulation of the prosecuting attorney and the deputy

public defender representing petitioner. This practice is not uncommon, and there is no question that one may, by stipulation, waive the right to confrontation of witnesses. Dr. Brock's testimony, while offered by the prosecution, was actually more favorable to the petitioner. It contradicted the testimony of the victim's parents that petitioner had stated that he could save her eye through his treatment. It also established that the parents of the victim had declined Dr. Brock's advice to reschedule the operation earlier planned before the parents took the victim to petitioner for treatment of the cancer from which she died. Thus, this testimony tended to support the defense theory that there was good faith on the part of the petitioner in his treatment of the victim and the lack of proximate cause between the petitioner's representations and treatment of the victim and the death. To the extent that Dr. Brock's testimony was that surgery to cure the cancer of the victim, Linda, should be performed, it was merely cumulative of other medical experts who likewise so testified. Thus, it can be said that the public defender's tactic in entering into the stipulation was indeed a wise application of trial strategy.

■ (5) Petitioner's fifth ground, that the grand jury was unconstitutionally composed in that all persons of the age of 30 and under and all persons of the economic status of the petitioner were systematically and deliberately excluded from the entire tentative grand jury list, is not a proper ground for attack on habeas corpus. An objection to the grand jury panel should be made seasonably by motion to quash, or some similar motion, and cannot be raised by collateral attack on habeas corpus. Kelly v. Squier, 166 F.2d 731 (9th Cir. 1948), cert. den. 334 U.S. 849, 68 S.Ct. 1501, 92 L.Ed. 1772; Redmon v. Squier, 162 F.2d 195 (9th Cir. 1947). Petitioner would refute a contention that there was a voluntary, understanding relinquishment of a known right to attack the indictment before trial by his statement that the fact of the discriminatory selection of the grand jury has "only recently been discovered" by him. The record is not sufficient for the Court to make an affirmative finding regarding a voluntary, understanding relinquishment of such right to attack the indictment; however, it is "sufficient to call for application of the principle that this belated attack is foreclosed by the judgment." Rambo v. Peyton, 380 F.2d 363 (4th Cir. 1967), at 364 n. 1.

Furthermore, the facts which petitioner presents concerning the tentative grand jury panel do not support his contention that the persons were all over the age of 30. The Tentative Grand Jury List for 1962, attached to the petition, lists Mrs. Anne Negri, Age 27, Mrs. Joann Phillips, Age 30, and Miss Juanita Sayer, Early 30's.

It further appears that petitioner has not exhausted his state court remedies with respect to this issue. Nowhere in the petition does he indicate that he has presented this issue to the California State Court. The Return to the Petition filed by respondent states that the grand jury composition issue has never been presented to the state courts. This contention is supported by the briefs on appeal filed by petitioner · in the state courts wherein the issue of the grand jury does not appear. Petitioner, in his traverse, has not disputed the contention that he has not heretofore raised this issue, and thus this Court may accept the fact that he has not exhausted his remedies with respect to this issue. 28 U.S.C. § 2248. This fact alone is sufficient reason for this Court to deny relief on this ground. 28 U.S.C. § 2254; Schiers v. California, 333 F.2d 173, 174 (9th Cir. 1964).

■ (6) Petitioner's final contention attempts to test the sufficiency of the evidence supporting his conviction. It is not the task of this Court to weigh the sufficiency of the evidence on a habeas corpus application. It is only

where there is an entire lack of evidence to support a conviction that such an attack may be made in a habeas corpus proceeding. This Court has read and considered the record of the trial proceedings in the state court and finds that there was ample evidence to support the conviction. Petitioner's contention that the evidence was insufficient because it rested on the testimony of a doctor belonging to a hostile school of medicine to the one to which petitioner belonged is on its face without merit. There is no error in the prosecution's reliance on the expert testimony of a medical doctor concerning the cause of death, validity of an unorthodox treatment for cancer and the medical probability of prolonged life of the victim.[1] Such evidence was obviously believed by the jury and it is certainly competent evidence upon which to base the conviction.

Furthermore, Dr. George H. Haynes, Dean of the Los Angeles College of Chiropractic, testified that nothing in the teaching (Rep.Tr. p. 323 et seq.) of that profession suggested that surgery was an improper method of treatment of cancer, and that a cancer patient should not be referred to a medical physician. Further, it was taught while Dr. Phillips was a student that it was unethical to promise or guarantee cures to patients. (Rep.Tr. p. 333.) Dr. Haynes further testified that during the same period nothing was taught at his school that food supplements and vitamins could cure cancer, nor that a biopsy was unnecessary to diagnose cancer. (Rep. Tr. p. 328.) Accordingly, for the reasons herein stated,

It is ordered that the petition for a writ of habeas corpus is denied and the action is dismissed.

Dated this 20th day of March 1970.

Francis C. Whelan,

United States District Judge.

1. It should be noted that there were two medical doctors who testified concerning the matters in question, Dr. Bradley Straatsma and Dr. Kenneth Chapman.