## ORDER

**In re S, A.**

*Leonard I. Sharon* and *Lois Goodman*, for defendant.

TAMILIA, J., July 25, 1972.—This is a proceeding pursuant to the Interstate Compact on Juveniles, 62 PS §731, et seq.; 32 D. C. Code §1101, et seq., for the return of S. A., a juvenile, to Washington, D. C. It is a matter for first instance in the Allegheny County court and because there is little precedent at any judicial level relating to the operation of this compact, a discussion is deemed warranted.

S. A. is a 16-year-old boy who participated in a demonstration in Washington, D. C., on April 15, 1972, in protest of the administration's bombing of North Vietnam. In the course of this demonstration, he was arrested and incarcerated for a brief time and subsequently released to return to Allegheny County, where his parents reside. It is important for the purpose of our decision to note that S. A. was never adjudicated a delinquent on the charges for which he was arrested, those charges having been dismissed, and that the charges upon which the present proceedings are founded appear to involve the same transaction. While the earlier charge was summary in nature, and the latter charge a misdemeanor, a slight changing in wording and designation of charge appear to be the only distinguishing feature. The case came before this court upon a requisition directed to the Administrator of the Interstate Compact, Helene Wohlgemuth, who

is also the Secretary of Public Welfare for the State of Pennsylvania. Upon receipt of the petition for requisition from the Superior Court of the District of Columbia, Family Division, a petition was filed in this court and notice was given to S. A. and his parents of a hearing to determine if the requisition was legally sufficient and the identity of the child the same as the person named in the requisition. S. A. was represented by counsel from Washington, D.C., and local counsel at a hearing before this court on July 11, 1972. Upon review of the testimony, arguments and briefs presented, it is the determination of this court that the petition for requisition must be denied and that, in the interest of the child, no further control or supervision of the child can be justified. Corporation Counsel of Washington, D.C., was invited to participate in this proceeding because of the novel issues presented here, but he declined to present briefs, arguments or testimony in support of its requisition. This participation was not necessary as he had the right to rely on the allegations of the requisition and accompanying petition and affidavits. On their face, the documents were insufficient to support the requisition.

The requisition must fail for three fundamental reasons, each of which, standing alone, would have been a sufficient basis for denial. The reasons and a discussion of each follows.

1. The requisition fails because the Interstate Compact on Juveniles is based upon reciprocity in that the initiating and responding jurisdictions must have agreed between themselves to honor substantially similar provisions contained in the compact as legislated by each of the signatories to it. The provision relied upon by the Washington, D.C., authorities does not exist in the Pennsylvania enactment, and therefore Pennsylvania is powerless to honor the request.

2. The requisition fails because the recent United States Supreme Court decisions on double jeopardy and collateral estoppel require that once a charge is placed before a court of competent jurisdiction, and this charge has been dismissed, or if the charge could reasonably have been included as an additional charge with the initial proceeding because the elements of both charges are interchangeable and arising from the same actions, said dismissal or failure to proceed bars a subsequent action.

3. The requisition must fail as the intent of the interstate compact is remedial in nature rather than punitive and the basic consideration is the interest and welfare of the child. None of the allegations, petitions or facts presented in this court would warrant the return of S. A. to Washington, D.C., other than as a means of harassment or punishment as no decision in that court, under the juvenile court theory, could result in more than a reprimand or minimal probation, with supervision to be conducted by this court. These proceedings in and of themselves have accomplished the desired purpose.

There is no question of the validity of the Interstate Compact on Juveniles and its binding effect on the signatory States. While it has not received the approval of Congress, it is not repugnant to the third clause of Article I, sec. 10, of the Constitution of the United States, which prohibits States from entering into agreements or compacts with other States without the consent of Congress. The rule enunciated in Virginia v. Tennessee, 148 U.S. 503 (1893), provides that only those compacts which affect the political balance of the Federal system or affect a power delegated to the national government, require such consent. The Compact on Juveniles has no such effect. Pennsylvania and the District of Columbia are signa-

tories to the Act of June 13, 1967, P. L. —, (No. 21), 62 PS §731 et seq.; 32 D.C. Code §1101, et seq., and have mutually agreed to honor those provisions common to both ratifications.

The basic act is comprised of five sections, with the major provisions being contained in the 16 articles of the first section. Article I, "Findings and Purposes," provides as follows:

". . . The cooperation of the states party to this compact is . . . necessary to provide for the welfare and protection of juveniles and of the public with respect to (1) cooperative supervision of delinquent juveniles on probation or parole [Art. VII]; (2) the return, from one state to another, of delinquent juveniles who have escaped or absconded [Art. V]; (3) the return, from one state to another, of nondelinquent juveniles who have run away from home [Art. IV]; and (4) additional measures for the protection of juveniles and of the public, which any two or more of the party states may find desirable to undertake cooperatively [Art. X, Art. XV]. . . ."

Article III, "Definitions," provides ". . . 'delinquent juvenile' means any juvenile who has been *adjudged delinquent* and who, at the time the provisions of this compact are invoked, is still subject to the jurisdiction of the court that made such adjudication or to the jurisdiction or supervision of an agency or institution pursuant to an order of such court; . . ."

Article IV, "Return of Runaways," provides ". . . In the event that a proceeding for the adjudication of the juvenile as a delinquent, neglected or dependent juvenile is pending in the court at the time when such juvenile runs away, the court may issue a requisition for the return of such juvenile upon its own motion . . ."

The above provisions detail the circumstances un-

der which this court would be required to honor a petition of requisition for the return of S. A., none of which applies to his case.

The Washington, D.C., authorities rely upon a provision of Article XVII, titled "Additional Provisions," contained in the Washington, D.C., Compact codification which is not contained in the Pennsylvania Compact. The additional provision reads as follows:

"All provisions and procedures of Articles V and VI of the Interstate Compact on Juveniles shall be construed to apply to any juvenile charged with being a delinquent by reason of a violation of any Criminal Law. Any juvenile, charged with being a delinquent by reason of violating any Criminal Law shall be returned to the requesting state upon a requisition to the state where the juvenile may be found. . . . The petition may be filed regardless of whether the juvenile has left the state before or after the filing of the petition."

S. A. was never adjudged a delinquent, as the charge upon which he was initially presented to the District of Columbia court was dismissed. He was never a runaway, since he was in the District of Columbia with the consent of his parents and had returned to his family's home. He is neither on probation nor subject to the control or jurisdiction of the District of Columbia court and only by virtue of the District of Columbia Article XVII, to which Pennsylvania is not a party, can he be returned to the District of Columbia.

Article XVI, "Additional Remedies," provides: ". . . this article shall provide additional remedies and shall be binding only as among and between those party states which specifically execute the same." Pennsylvania is therefore not bound by the District of Columbia Article XVII.

Had Pennsylvania been a party to Article XVII, it is the belief of this court that the return of S. A. would be improper, since the District of Columbia court is collaterally estopped from proceeding against S. A. under the charge alleged in the petition. When arrested S. A. was charged with "disorderly conduct (violation of police lines)." The Metropolitan Police Department arrest report states:

"The respondent while during a mass demonstration regarding the 'Vietnam situation' on above time and date (1515 hours, 4-15-72), (16th and K, NW) did cross police lines which had been set up to halt demonstrators. Respondent got into an altercation with officer when he resisted arrest, at which time he fell to the ground, and complained of back injuries. After examination by Dr. Walker, respondent was placed in Receiving Home about 2230 hours same date."

Counsel for S. A. informed this court that this charge was dismissed as against S. A. as well as all the other persons arrested at that time, in the proceeding on this charge in the Washington, D.C., court.

The petition for requisition contains a petition filed in the Superior Court of Washington, D.C., Family Division, which states that S. A. ". . . at about 3:15 p.m. on April 15, 1972, near 16th and K Streets, N.W. in the District of Columbia did assault Charles M. Monroe, an officer of the Metropolitan Police Department, while in the performance of his official duties, in violation of 22 D.C. Code §505(a)."

Without question, the two charges involve the same transaction and parties, and the same evidence would, of necessity, have been presented to substantiate either charge despite the different classification of the acts. In Benton v. Maryland, 395 U.S. 784 (1969), the United States Supreme Court has held that the Fifth Amendment protection against double jeop-

ardy is one of the rights incorporated in the Fourteenth Amendment due process clause, and is therefore applicable to State proceedings. In Ashe v. Swenson, 397 U.S. 436 (1970), the Supreme Court further held that collateral estoppel is incorporated in the concept of double jeopardy when the same factual considerations and evidence, arising from a single transaction, are the basis for two or more prosecutions against the same person. In this case the transaction and the parties are identical. Dismissal of the earlier charge provides for a collateral estoppel to any subsequent proceeding arising from that transaction, pursuant to the Fifth Amendment protection against double jeopardy.

Finally, the interest and welfare of the child is a primary consideration in any proceeding against a juvenile, even when it is one under the Interstate Compact. The compact does not limit or restrict the power or interest of the court over the children who come before it. It states, ". . . In carrying out the provisions of this compact the party states shall be guided by the noncriminal reformative and protective policies which guide their laws concerning delinquent, neglected or dependent juveniles generally." The Juvenile Court Law of June 3, 1933, P. L. 1444, 11 PS §269-1, et seq., provides broad powers and discretion in the court pursuant to the concept of parens patriae, to effect the rehabilitation and correction of juveniles. At the requisition hearing on July 11, 1972, the court had ample opportunity to observe the demeanor of the respondent and his parents, and to receive testimony from school and court officials concerning the boy and his family. He spoke openly and the court believes honestly, about the events of April 15th. He stated he was in the protest with religious persons, with the approval of his parents. He was non-

violent and did not intentionally cross police lines. His altercation with the police arose when other protestors attacked the police and he moved forward asking the protestors to come away and to pull them away from the police. Nothing in the police report contradicts this statement. S. A. is a good student and respected by his superiors. He has not been arrested before and he has never been known to the Allegheny County Family Court. Court investigators have found no areas of his adjustment which would require court supervision or intervention. Under these circumstances, it would appear gross error on the part of this court to return S. A. to Washington, D.C., especially when it would appear that the Washington, D.C., court staff would again recommend dismissal of the charge as their investigation would reveal no more than ours.

Further, there is a precedent in the Superior Court of the District of Columbia, Family Division, in the case of Michael Floyd Fields, Docket No. J-6184-71. In that case a ward of the District of Columbia court was alleged to have committed two armed robberies in Maryland. Maryland requisitioned his return. The court in that case held that the best interest of the child is a consideration which underlies any question as to whether to grant or deny such a requisition.

In this case, it is believed that in the best interest of S. A., the petition for requisition must be denied.

## ORDER OF COURT

And now, to wit, July 25, 1972, upon review of the petition of requisition from the Superior Court of the District of Columbia, Family Division, after hearing in open court and consideration of the arguments and briefs of counsel, it is hereby ordered and decreed that said petition of requisition be and is hereby denied, for the reasons detailed in the attached memorandum.