STATE OF NORTH CAROLINA v. W. C. EDWARDS

No. 8226SC746

(Filed 5 July 1983)

**Burglary and Unlawful Breakings § 4; Criminal Law § 26.5— acquittal of larceny—evidence of larceny in breaking and entering case—double jeopardy—collateral estoppel**

> Where the jury found defendant not guilty of larceny but was unable to reach a verdict as to breaking and entering, the State was precluded by double jeopardy and collateral estoppel from presenting evidence of defendant's guilt of larceny in his retrial for breaking and entering. The case of *State v. Baker*, 34 N.C. App. 434 (1977) is no longer authoritative on this point.

> Judge WEBB dissenting.

APPEAL by defendant from *Ferrell, Judge.* Judgment entered 25 March 1982 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 19 January 1983.

During the night of September 22, 1981, Field's Jewelry Store at the corner of North Tryon and Fifth Street in Charlotte was broken into and property valued in excess of $20,000 was stolen. Entry was accomplished by breaking the glass out of the front door. In February 1982, defendant was tried upon a felony indictment charging him with that breaking and entering and larceny. The jury found him not guilty of the larceny, but was unable to reach a verdict on the breaking and entering charge, and a mistrial as to it was declared. Before that trial occurred, James Edward Moore, also charged with the offense, pled guilty and was serving his prison term. From the time Moore was apprehended near the scene with most of the stolen jewels in his

possession, he admitted the break-in and larceny, but denied that defendant was involved.

In that trial the State's evidence pertinent to the defendant's involvement in the break-in and larceny was to the following effect: Charlotte police officer Zencon, approaching the store by car in response to a police broadcast a few minutes earlier that a burglary alarm at Field's was sounding, saw a black male near the store run across Tryon Street and down Fifth Street, where he entered an alleyway. The man wore a dark jacket and light-colored pants and ran with his hands clutched to his sides, bent over, and Zencon identified him as the defendant. Zencon watched the alley entrance as he waited for assistance and made no attempt to apprehend other individuals he saw near the store, including two or three known criminals. Several other police officers soon arrived and apprehended the defendant as he sat on the stoop of a building. A search of the alleyway and area where defendant was sitting was unproductive, but a search of the general area that defendant ran through uncovered two ring display cases, a few rings, and other articles, which were scattered over a wide area. During the course of these and other searches, several other suspects were taken into custody, including James Edward Moore, who was carrying a shopping bag full of stolen rings and jewelry. While the defendant was being taken to a local hospital for treatment of a cut on his hand, an officer observed him picking pieces of glass from his clothing. Defendant's clothes and shoes were examined by the Charlotte Crime Lab, and the tests revealed that some of the particles taken from defendant's clothing were indistinguishable from those taken from the broken door at Field's Jewelry, but some of the glass particles were not similar to those taken from the broken door.

For the defendant, James Edward Moore testified that he committed the break-in and larceny with a man named David, and that the defendant, who he first met in jail after the robbery, was not a part of the crime.

Before his second trial for breaking and entering began defendant moved that the State not be permitted to introduce evidence of the larceny following the break-in, since he had been tried for that charge and acquitted. His motion was denied and the evidence presented during the trial was almost identical to

that presented during the first trial, when both the break-in and the larceny were being contested. A verdict of guilty was rendered and following the entry of judgment thereon the defendant appealed.

*Attorney General Edmisten, by Special Deputy Attorney General Ann Reed, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Lorinzo L. Joyner, for the defendant appellant.*

PHILLIPS, Judge.

The main question for our consideration is whether in trying the defendant for breaking and entering the defendant's constitutional rights were violated by the State presenting evidence which tended to show that defendant was also guilty of larceny. Ordinarily, in trying one for breaking and entering, evidence showing that the defendant also committed larceny in connection with the break-in is admissible, even though the defendant is not indicted for larceny. Such evidence is usually received in such cases because it tends to establish the defendant's intent or motive in perpetrating the break-in. *State v. Harlow,* 16 N.C. App. 312, 191 S.E. 2d 900 (1974).

But, as the defendant rightly maintains, this is not the ordinary breaking and entering case and in permitting the State to prove the defendant's intent and motive by evidence connecting him with the Field's Jewelry Store larceny, prejudicial error was committed. The issue of defendant's participation in the Field's theft was tried and forever set at rest in the first trial. Having safely run that "gantlet" the defendant had a constitutional right not to again be jeopardized by that evidence. Though the crime that defendant was tried for this time, breaking and entering, is not the same crime that he was acquitted of by the first trial, larceny, defendant's former jeopardy rights were nonetheless violated to the prejudice of his liberty, since the *truth* of the larceny evidence was again put in issue against him and no doubt contributed greatly to his conviction.

Though time was when a defendant in a State criminal proceeding could successfully plead former jeopardy only when he was being prosecuted a second time for the selfsame crime that

he had been acquitted of before, when no refuge could be found in the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, and when the states, unlike other litigants, could, under one nomenclature or another, relitigate in criminal cases factual issues that they had tried and lost, that time is no more. Since *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed. 2d 707 (1969), the Double Jeopardy Clause has been enforceable against the states through the Fourteenth Amendment. And since *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed. 2d 469 (1970), the benefits of the collateral estoppel doctrine have been available to defendants in state criminal proceedings. This doctrine, the Court said, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 90 S.Ct. at ---, 25 L.Ed. 2d at 475.

The collateral estoppel doctrine had long been available to civil litigants in state and federal courts alike and had been available to defendants in federal criminal proceedings at least since *United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916), when the Supreme Court rejected the government's claim that the doctrine of *res judicata* had no application to criminal cases except to the limited extent expressly recited in the Fifth Amendment. In doing so, the Court, through Justice Holmes, unanimously declared with characteristic incisiveness: "It seems that the mere statement of the position should be its own answer. It cannot be that the safeguards of the person, so often and so rightfully mentioned with solemn reverence, are less than those that protect from a liability in debt." 242 U.S. at 87, 37 S.Ct. at 69, 61 L.Ed. at 164. As has so often been the case, the soundness of Holmes' ruling has proven itself, it now being too plain to miss, since he pointed the way, that there is no good reason and never was for depriving only defendants in criminal proceedings of the full benefit of their adjudications, or for exempting the state from the universal ban against relitigating issues that are contested and lost.

The authoritative impact of *Ashe v. Swenson, supra,* was recognized by our Supreme Court in *State v. McKenzie,* 292 N.C. 170, 232 S.E. 2d 424 (1977), though the defendant there was held to have waived his double jeopardy rights by failing to timely

assert them. In that case, the Court, through Justice Exum, pointed out that determining whether the State had relitigated any issue *necessarily* decided in the defendant's favor in an earlier case would sometimes be difficult. In this case that is no problem.

Notwithstanding that the State tried the defendant for the Field's Jewelry larceny and lost, it put identically the same larceny proof in evidence again just as though the first trial had never occurred. Since a larceny of jewelry worth more than $20,000 had clearly occurred, his alleged co-defendant Moore admittedly committed it and the break-in as well, and both crimes were committed almost simultaneously, the jury's not guilty verdict can only mean that they found that the defendant did not act in concert with Moore with respect to either crime and did not commit larceny on his own. Under the Court's "acting together with a common purpose" instruction, had the jury believed that the defendant assisted Moore in any manner, he would have been found guilty of both charges, there being no conceivable basis in the evidence for an assumption that he helped Moore in one part of the crime and disassociated himself from him in the other. By using evidence linking defendant to the larceny and Moore, the State openly relitigated the defendant's participation in the larceny and his association with Moore; that this was done only for the purpose of convicting him of breaking and entering, rather than larceny, neither alters the relitigation nor lessens its baleful effect. Since the first verdict established that defendant did not commit or participate in the larceny, under basic principles of law and *Ashe v. Swenson, supra,* the State was estopped from ever again contending against him to the contrary, in any proceeding, for any purpose. Consequently, the defendant's conviction must be set aside and if he is retried, it must be without using any evidence which tends to connect him with the Field's larceny or James Edward Moore.

We are aware that in *State v. Baker,* 34 N.C. App. 434, 238 S.E. 2d 648 (1977), another panel of this Court under similar circumstances reached a contrary result. This may have happened, as the briefs and record in that case reveal, because the appellant there mentioned neither the Double Jeopardy Clause of the Fifth Amendment, collateral estoppel, *Ashe v. Swenson,* nor *State v. McKenzie,* decided shortly before then, but relied only upon the

North Carolina doctrine of former jeopardy, which was found to be inapplicable because breaking and entering is not the same crime as larceny. But whatever the reason was for that case being decided as it was, it is no longer the law on this point and cannot be followed, for the reasons above-stated.

Apart from the constitutional inhibition against relitigating the defendant's participation in the larceny, permitting one to be imprisoned because of evidence that has been rejected by an earlier jury would conflict with other bedrock principles of our jurisprudence. Under our system the whole purpose of a trial is to establish the truth and a verdict fairly arrived at is accepted by all who serve the law as the very embodiment of truth. Our rules of evidence evolved and developed as they have because of their believed utility in rejecting evidence that is untrustworthy and in receiving evidence that is trustworthy. "The purpose of the rules of Evidence is to assist the jury to arrive at the truth." *State v. Vestal,* 278 N.C. 561, 589, 180 S.E. 2d 755, 773 (1971). So inherent is our law's dependence upon and regard for evidence that is trustworthy and so strong is its aversion to evidence that is not, convictions obtained by using evidence known to be unreliable or by withholding evidence known to be reliable are routinely set aside. These principles and practices cannot be reconciled with offering and accepting as worthy of belief evidence that just a month before had been solemnly determined by an earlier jury to be unreliable.

The defendant's earnest contention that the evidence was insufficient to justify conviction and that a directed verdict should have been entered is rejected, but only because in making this determination we are required to consider all of the evidence that was before the trial judge, including evidence that should not have been admitted. *State v. Walker,* 266 N.C. 269, 145 S.E. 2d 833 (1966). What evidence, if any, the State would have introduced had the larceny evidence not been admitted or what evidence will be presented during the next trial, if any, we do not know. But we do know, of course, and do not hesitate to say, that evidence which shows only that one was standing outside a store that had been broken into, ran upon the approach of a police car, and had particles of glass in his clothing, some of which were indistinguishable from the broken glass in the store's door and some of which were not similar thereto, is not sufficient under our law to

establish that that person had broken into and entered the store with the intent to commit larceny therein.

The judgment appealed from is therefore reversed and the case remanded to the trial court for further proceedings in accord with this opinion.

New trial.

Judge BECTON concurs.

Judge WEBB dissents.

Judge WEBB dissenting.

I dissent from the majority. I do not believe double jeopardy or collateral estoppel prevents the State from introducing evidence relevant to the crime with which defendant is charged. This is so even if the defendant has been acquitted of another crime which the evidence tends to prove.

I believe we are bound by *State v. Baker*, 34 N.C. App. 434, 238 S.E. 2d 648 (1977). That case considered and rejected the double jeopardy argument of defendant under similar circumstances and I believe it governs.

I vote to find no error in the trial.