DISSENTING OPINION
Apparently the term "final judgment" has no meaning for either the trial court or the majority in this case. First the trial court, in clear violation of appellant's right against double jeopardy, resentenced appellant after she had commenced execution of her sentence. Now this court, purportedly in "the furtherance of justice," has "sua sponte" reconsidered our decision reversing the trial court, even though the case law upon which the majority relies was addressed by the dissent in our original opinion and presumably, considered and rejected by the judge who now joins the majority. Accordingly, I dissent.
In its attempt to justify the trial court's re-sentencing, the majority contends that the trial court sentenced appellant to probation and then subsequently properly revoked her probation in a probation revocation hearing. In its journal entry dated January 28, 1999, the trial court set forth the sentence imposed at the January 25, 1999 sentencing hearing as follows:
 The court finds that a community control sanction will adequately protect the public and will not demean the seriousness of the offense. It is therefore ordered that the defendant is sentenced to 3 years of community control, under the supervision of the adult probation department.
 Defendant is remanded to Cuyahoga County jail until bed is available for in-patient treatment; * * * sheriff to transport * * * *; defendant to be supervised by intensive special probation' to be evaluated by TASC; to maintain full-time employment; to perform 25 hours of court community' work service.
 Violation of the terms and conditions may result in more restrictive sanctions, a prison term of 11 months or extensions, as provided by law.
 The defendant is ordered to report to the probation department, pay costs and standard probation fee. (Emphasis added.)
Thus, contrary to the majority's contention, the trial court did not sentence appellant to probation; it sentenced her pursuant to R.C. 2929.15 to community control sanctions, albeit under the supervision of the adult probation department.
Moreover, contrary to the majority's contention, the trial court did not conduct a proper revocation hearing before re-sentencing appellant to prison. First, the record reflects that the hearing was held in violation of appellant's due process rights under the Fourteenth Amendment to the United States Constitution. In Gagnon v. Scarpelli (1973), 411 U.S. 778, 93 S.Ct. 1756,36 L.Ed.2d 656, the United States Supreme Court set forth a series of procedural requirements for revocation hearings. Among these provisions, the Supreme Court mandated that a probationer shall be afforded "* * * written notice of the claimed violations of [probation] * * *." Id. at 786, citing Morissey v. Brewer (1972),408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484. Here, there is no statement of violation from the probation department in the record, undoubtedly because, as the trial judge stated at the re-sentencing hearing, appellant "hasn't violated probation (sic) under the terms that I gave her."
Moreover, in its journal entry dated February 4, 1999 regarding the hearing, the trial court makes it abundantly clear that it is re-sentencing appellant, not revoking her community control sanctions:
 Re-sentencing from January 25, 1999. Defendant arrested January 22, 1999 by Fairlawn Police Department for theft, possession of criminal tools, drug paraphernalia and child endangering.
 Defendant plead guilty to receiving stolen property ORC 2913.51 F-5 as charged in Count 1 of the indictment. Probation would demean the seriousness of the offense. Defendant was arrested by Summit County three days prior to sentencing. Defendant has an extensive criminal record.
 Defendant is sentenced to Ohio Reformatory for Women, Marysville, Ohio for a term of 8 months and to pay costs. Defendant given 9 days jail credit for time served. Sheriff to transport. (Emphasis added.)
Thus, the record and the trial court's journal entry clearly reflect that the hearing was nothing more than a re-sentencing by a trial judge who "acquired new derogatory information" about appellant and, on the basis of this information, improperly increased her sentence.[1] City of Brook Park v. Necak (1986),30 Ohio App.3d 118.
The Double Jeopardy Clauses of the state and federal Constitutions protect a defendant's right to finality for an acquittal and prevent multiple punishments for the same conviction. Id. at 119, citing Benton v. Maryland (1969), 395 U.S. 784, 795-796. Courts may re-sentence a defendant who has not begun to serve his or her sentence to a more severe sentence without violating the multiple-sentence protections of the Double Jeopardy Clause because, before its execution, a sentence lacks the constitutional finality of a verdict of acquittal. State v. Meister (1991), 76 Ohio App.3d 15. 17; State v. Vaughn (1983), 10 Ohio App.3d 314, 316; Columbus v.Messer (1982), 7 Ohio App.3d 266, 268. It is well established, however, that once a valid sentence has been executed, a trial court has no power to modify the sentence except as provided by the General Assembly. State v. Hayes (1993), 86 Ohio App.3d 110, 112, citing State v. Addison (1987), 40 Ohio App.3d 7; Meister, supra.
R.C. 2929.15(A)(2)(b) provides that the person or entity supervising an offender who has been placed on community control sanctions may report the offender to the sentencing court "if the offender violates any of the sanctions or the mandatory condition imposed under division (C)(1)(b) of section 2951.02 of the Revised Code."[2] R.C. 2929.15(B) provides sentencing options for an offender who has violated the terms of his or her community control sanction:
 If the conditions of a community control sanction or the mandatory condition imposed under division (C)(1)(b) of section 2951.02 of the Revised Code is violated, the sentencing court may impose a longer time under the same sanction * * *, may impose a more restrictive sanction * * *, or may impose a prison term on the offender * * *. (Emphasis added.)
Here, appellant's failure to inform the trial court of her arrest and subsequent plea in Summit County was not a violation of the terms of her community control sanctions. The trial court's order dated January 28, 1999 sentenced appellant to thirty-six months of community control sanctions on the conditions that she undergo in-patient drug treatment, obtain and maintain full-time employment when released from drug treatment, perform twenty-five hours of community service and pay court costs and a probation supervision fee. Nowhere during the re-sentencing hearing nor in the journal entry did the trial court advise appellant that her community control sanctions were conditioned upon informing the court, prior to sentencing, of all of her prior criminal convictions. Indeed, at the hearing, the trial court expressly found that appellant had not violated any of the community control sanctions he had earlier imposed. Accordingly, the trial court was without statutory authority to revoke appellant's community control sanction and increase her sentence by ordering her to serve eight months of incarceration.
This court recently addressed the same issue in State v. Hooks
(1998), 128 Ohio App.3d 750. In Hooks, the trial court sentenced the defendant, a sex offender, pursuant to R.C. 2929.15 to five years of community control sanctions with various conditions. Subsequently, the defendant's probation officer raised concerns with the trial court that the defendant and his wife had rented the upstairs apartment of their house to a family with two young daughters. After conducting a hearing, the trial court ordered that appellant vacate his residence within seven days.
This court reversed the trial court's post-sentencing order on appeal. Noting that "the record [was] devoid of any finding that appellant violated his community control sanctions," we held that the trial court's order "constituted a clear violation of double jeopardy restrictions." Id. at 753. We stated:
 R.C. 2929.15(B) authorizes the post-sentencing imposition of more restrictive community control sanctions only if the original probationary conditions have been violated.
 In the instant case, the post-sentencing order requiring appellant to vacate his residence constituted an additional punishment for the same conviction. The trial court, by imposing an additional sanction, increased appellant's punishment after execution of his original sentence to community control sanctions had commenced. Id.
To avoid the clear import of the double jeopardy restriction, however, the majority contends that the trial court properly re-sentenced appellant because her sentence had not yet commenced into execution. In State v. Thomason (Feb. 23, 1995). Cuyahoga App. No. 67012, unreported, which the majority relies upon to support its position that a defendant who misrepresents facts during a sentencing hearing may properly be held to be an inappropriate candidate for probation, this court found that a defendant's sentence of probation "[goes] into execution immediately upon journalization of the trial court's sentencing order." Id.
Curiously, the majority ignores this part of the opinion and asserts that appellant had not yet begun serving her sentence on February 2, 1999, when she was re-sentenced, because she was in the county jail, waiting transfer to an in-patient drug facility and this detention was only. "incidental" to the rest of the trial court's sentencing order. The majority is wrong: appellant's sentence commenced execution on January 28, 1999, when the trial court journalized its entry reflecting the sentence it had imposed. Once the execution of that sentence began, the trial court was without jurisdiction to reconsider and impose a higher sentence upon appellant, except as provided by statute.
Accordingly, in Brook Park v. Necak (1986), 30 Ohio App.3d 118, this court vacated the trial court's new sentence imposed without statutory authority after the defendant had commenced execution of the trial court's original sentence. In Necak, the defendant pled guilty to driving under the influence of alcohol. The trial court sentenced him to thirty days in jail and payment of a $225 fine and court costs. The court suspended twenty-seven days of the jail term, and placed the defendant on active probation for one year on the condition that he participate in an alcohol rehabilitation program. Six weeks later, after learning that defendant's counsel had misrepresented to the court that defendant's previous conviction did not involve an alcohol-related moving violation, the court recalled the defendant to reconsider its previous sentence. The court vacated its original sentence, and then re-sentenced the defendant to sixty days in jail and a fine of $225 and costs. Id. at 119.
This court reversed, on appeal, finding that the trial court had modified a legally proper sentence without statutory authority after the defendant had commenced execution of his sentence. We stated:
 The defendant's right to expect finality precluded such action. Misinformation from defendant's counsel did not make the original sentence unlawful. If the court could reconsider its sentence whenever it acquired new derogatory information, the defendant would have no assurance of finality. (Citation omitted.) Id. at 120.
The majority's astounding assertion that Necak is not controlling in this case because Thomason "is more recent thanNecak" ignores the Ohio Supreme Court Rules for the Reporting of Opinions. Specifically, S.Ct.R.Rep.Op. 2(G)(2) states that unreported appellate opinions may be considered for their persuasive effect, but reported opinions "shall be considered controlling authority for all purposes in the judicial district in which they were rendered * * * until [the] opinion is reversed or modified * * *." Thus, as agreed by the majority in our original opinion, Necak, notThomason, is controlling in this case.
Moreover, the majority's conclusion that Necak is distinguishable from this case because Necak had served a portion of his term of incarceration before being placed on probation is erroneous. What matters is whether a defendant's sentence — whether community control sanctions, probation or incarceration — has commenced execution. Once it has, a trial court may only re-sentence the defendant pursuant to statute.
Apparently conceding that appellant did not violate any of the terms of her community control sanctions, and that the trial court was without statutory authority to revoke her community control sanctions, the majority reasons that the trial judge properly resentenced appellant because she "misled" him at the sentencing hearing by not telling him that she had been arrested and pled guilty in Summit County shortly before sentencing. United Statesv. Kendis (3d Cir. 1989), 883 F.2d 209, which the majority quotes extensively to support its conclusion, is easily distinguishable from this case, however.
In Kendis, the defendant persuaded the district court to give him a relatively light prison sentence by convincing the court that he had made restitution to the victims of his first crime but neglecting to inform the court that the restitution had been made with other clients' money. Thus, the court relied upon Kendis' representations regarding his acts of restitution in deciding what sentence to impose.
Here, however, the record is devoid of any indication that either appellant or her defense counsel persuaded, the trial judge to sentence appellant to community control sanctions or that her failure to inform him about her conviction in Summit County was influential in the trial judge's decision. Indeed, the record demonstrates that the trial judge relied upon the recommendation of the prosecutor to sentence appellant to community control sanctions, despite her extensive criminal background:
 DEFENSE COUNSEL: Miss Burnside is before the Court, and she apologizes for the crime that caused her to be placed before this Court and requests that the Court place her on community control sanctions. We discussed this with the prosecutor and the prosecutor also agrees or would recommend to the court she be placed on community control sanctions. * * * She would also like to address the court.
* * *
 THE COURT: What do you wish to say before I sentence you?
APPELLANT: I would like to get some help.
THE COURT: Yes.
APPELLANT: I have been to jail before.
THE COURT: You have?
APPELLANT: Yeah.
THE COURT: Yes. And?
 APPELLANT: I would like to get some kind of drug treatment, some kind of help. The program that — I hooked up finally with a program. They can take me today at 3:00. It's like an inpatient called Stella Maris.
 THE COURT: The probation authorities will determine how to deal with you, or the alternative is to send you back to the penitentiary.
 The court has before it a presentence investigation report and you have a colorful history. 1991 petty theft in Fairview Park, shoplifting nine months later in North Olmsted, two months later in Avon Lake complicity to theft, six months later, Parma Heights, theft, five days later, North Olmsted, theft, several months later, Cleveland, drug abuse. This brings us to October '92. February '93, Garfield Heights, grand theft, '93, Cuyahoga County, drug abuse, April-May of '93, Brooklyn, Ohio, grand theft, '95, Middleburg Heights — shall I go on?
APPELLANT: No.
 THE COURT: Drug abuse, trafficking, drug abuse, grand theft. I cannot, in good conscious (sic), put you out on the street.
 APPELLANT: That is why I got myself into this treatment program. Today they will take me at 3:00.
 THE COURT: The Court will deal with you through better channels. I'm going to place you inpatient drug treatment, ISP supervision. You're to have a TASC evaluation, you're to maintain full-time, verifiable employment after you get out of the bed.
APPELLANT: I have a job, your Honor.
 THE COURT: To obtain and maintain full-time, verifiable employment. This is my turn to speak now. You're required to perform 25 hours of court community service and, of course, if you don't you are going to go to the penitentiary.
 I, therefore, am placing you on community control sanctions with the proviso if you violate your community control sentence you will be sentenced to the Ohio State Reformatory for Women for a period of 11 months. The period of your probation is 36 months.
DEFENSE COUNSEL: Thank you.
THE COURT: Good luck to you.
I acknowledge, as the majority does, that probationers hold constitutional rights that are more limited than those of other people. See State v. Thompson (1987), 33 Ohio St.3d 1, 7. Nevertheless, they are entitled to assume that a judge will abide by the law when imposing a sentence for a criminal conviction. Because the trial judge did not follow the law when he re-sentenced appellant to prison, I would sustain appellant's assignment of error and reverse the trial court's decision.
[1] Curiously, the majority contends that the trial court's new sentence of eight months incarceration was a "reduced sentence."
[2] R.C. 2951.02(C)(1)(b) provides that "during the period of the nonresidential sanction, the offender shall abide by the law * * *."