[Cite as *In re A.B.*, 2025-Ohio-1429.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| IN RE: A.B. | : | APPEAL NOS. | C-240478 |
| | | | C-240479 |
| | : | | C-240480 |
| | | | C-240481 |
| | : | | C-240482 |
| | | | C-240483 |
| | : | | C-240484 |
| | | | C-240485 |
| | : | | C-240486 |
| | | | C-240487 |
| | : | | C-240488 |
| | | | C-240489 |
| | : | TRIAL NOS. | 24/271-13X |
| | | | 24/271-12 X |
| | : | | 24/271-11 X |
| | | | 24/271-10 X |
| | : | | 24/271-09 X |
| | | | 24/271-08 X |
| | : | | 24/271-07 X |
| | | | 24/271-06 X |
| | : | | 24/271-05 X |
| | | | 24/271-04 X |
| | : | | 24/271-03 X |
| | | | 24/271-02 X |
| | : | | |
| | : | *O P I N I O N* | |
| | : | | |

Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: April 23, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Jessica Moss*, Assistant Public Defender, for Defendant-Appellant.

**MOORE, Judge.**

{¶1}   Defendant-appellant A.B. attended Mariemont High School where he claims he was constantly bullied because he was "fat and gay." Fed up with this bullying, A.B. formulated a plan to make it stop and to make those who targeted him pay. With the help of an adult in Colorado, who A.B. met through social media, he put together a list of individuals he intended to harm (the "hit list"). The hit list was made up of 11 fellow students and a teacher. The plan was to be carried out at the school.

{¶2}   A.B. confided his plan to another student. That student disclosed the plan, which led to a police investigation and A.B.'s arrest.

{¶3}   A.B. was initially charged with conspiracy to commit aggravated murder.[1] The State amended the complaint to add 12 counts of inducing panic and dismissed the conspiracy charge in exchange for A.B.'s plea to the 12 amended charges. The juvenile court imposed a one-year sentence each on counts two through six, which were to be served concurrently. The court also imposed concurrent one-year sentences on counts seven through 13.  The sentences for counts seven through 13 were to be served consecutively to the sentences in counts two through six, for a minimum sentence of two years in the Ohio Department of Youth Services ("ODYS") (with credit for time served).[2]

{¶4}   A.B. now appeals, arguing the 12 counts should have been merged for sentencing purposes. Although the charging documents for the 12 counts of inducing panic only specified a single place for the planned shooting—Mariemont High School—the juvenile court treated each individual named on the hit list as a separate

---

[1] The police did not charge the Colorado adult, concluding that he did not have the means to carry out the plan.

[2] A first- or second-degree-felony adjudication subjects a juvenile to a minimum one-year sentence, with the maximum sentence not to exceed the time when the juvenile turns 21 years old.

victim throughout the proceedings. As a result, we affirm the juvenile court's judgment.

## I.    *Factual and Procedural History*

**{¶5}** In February 2024, A.B. was charged with conspiracy to commit aggravated murder. If this act had been committed by an adult, it would be a first-degree felony in violation of R.C. 2923.01. According to the charging document, A.B. compiled a hit list of the individuals he planned to kill, kidnap, or rape.  A.B. felt his mission of vengeance was just, reportedly telling the police:

> In my eyes, they deserved it; I was playing peacemaker; I was going to get people what they deserved; In my eyes they deserved it for the things that they did to me and others; I picked only the people that I thought deserved to die.

A.B. further explained that he was pushed to a point of wanting to kill the 12 people on the list because they had made fun of him "for being fat and gay" or because they had undeservedly done similar horrible things to other people. Before being discovered, A.B. had screwed his resolve to follow through with his plan to the sticking place, reportedly telling police, "I was committed I wanted to do it."

**{¶6}** As mentioned, the State amended the complaint to add 12 inducing-panic charges based on the 12 individuals named on the hit list. The amended counts reflected, inter alia, that A.B. falsely warned of an "impending crime" and the "public place involved was Mariemont High School." A.B.'s counsel did not object to the amendments.

**{¶7}** As part of the plea deal, the State and A.B. waived a reading of the facts, and A.B. admitted to the 12 counts of inducing panic. The court, after confirming that the State had complied with Marsy's Law, ordered victim-impact statements.

**{¶8}** Some, but not all, of the individuals on the hit list submitted victim-impact statements to the court. Although no temporary-protection orders were made part of the record, the court stated that some were filed against A.B.

**{¶9}** After A.B.'s counsel explained that his client's autism-spectrum disorder caused him to have anxiety when speaking publicly and exhibit behaviors that could be negatively misconstrued, counsel read a statement on A.B.'s behalf. Counsel stated that A.B. took full responsibility for his actions and, reading from the statement, went on to state, "Nobody under any circumstances deserves to be named in a school shooting plot. Nobody should ever have to fear going to school." The statement also reflected that A.B. no longer wished to harm those on the list, acknowledged he "deeply harmed these people's sense of security," that the threats were "very graphic and disturbing," and that he "clearly need[ed] help."

**{¶10}** In addition to imposing the two-year minimum sentence to the ODYS, the juvenile court ordered A.B. to stay away from Mariemont High School and imposed a no-contact order for each of the victims.

**{¶11}** A.B. requested a merger of the counts for sentencing purposes. The court noted A.B.'s objection to its decision not to merge the dispositions. The court explained that it denied A.B.'s request based on its finding that there was a separate animus for each offense where there were 12 intended victims.

**{¶12}** This appeal followed.

## II.    Analysis

### The trial court did not err in denying A.B.'s request to merge the dispositions.

**{¶13}** A.B. argues that, although the plot to commit the school shooting identified specific students and a teacher, the complaint charging 12 counts of

inducing panic only names one public place—Mariemont High School. A.B. asserts the counts should have been merged for the purpose of sentencing because inducing panic entails causing serious public inconvenience or alarm to that specified public place.

**{¶14}** We review a trial court's decision regarding allied offenses de novo. *State v. Savage*, 2022-Ohio-3653, ¶ 24 (1st Dist.), citing *State v. Williams*, 2012-Ohio-5699, ¶ 28.

**{¶15}** The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." *Id.*, quoting *State v. Ruff*, 2015-Ohio-995, ¶ 10. This protection applies to Ohio citizens through the Fourteenth Amendment to the United States Constitution, and is additionally guaranteed by the Ohio Constitution, Article I, Section 1. *Id.*, citing *Benton v. Maryland*, 395 U.S. 784, 794 (1969). The Double Jeopardy Clause protects against three abuses: (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." *Id.*, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

**{¶16}** Allied offenses of similar import are those offenses whose elements correspond to such a degree that the commission of one offense will result in the commission of the other. *Id.* at ¶ 26; *see State v. Waddy*, 63 Ohio St.3d 424, 448 (1992). If a defendant is indicted for the same conduct that can constitute two or more allied offenses, the defendant may be convicted of only one. R.C. 2941.25(A). However, a defendant may be convicted of all counts where a defendant's conduct supports multiple offenses. R.C. 2941.25(B).

**{¶17}** The following should be considered to determine whether a defendant's conduct supports multiple offenses: (1) whether the offenses were dissimilar in import

or significance, (2) whether the offenses were committed separately, and (3) whether the offenses were committed with separate animus and motivation. *Savage*, 2022-Ohio-3653, ¶ 27 (1st Dist.), citing *Ruff* at ¶ 31. An affirmative response to at least one of these questions would permit separate convictions. *Id.* Because an offense may be committed in different ways and offenses may have different import, the analysis must focus on the defendant's conduct. There is no general rule that governs every situation. *Id.*

### *Dissimilar in Import or Significance*

{¶18} Before applying the *Ruff* test for merger of offenses, we must look at the conduct of the defendant in the context of the statutory elements of the offense. R.C. 2917.31(A)(2), which governs inducing panic, provides, "No person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by threatening to commit any offense of violence."

{¶19} When the defendant's conduct constitutes offenses involving multiple victims, two or more offenses of dissimilar import exist. *Id.* The list that forms the basis of A.B.'s adjudications named 12 individuals as targets. This supports the finding that his intent was to harm 12 different people. A.B. also concedes in his merit brief that he did not intend to simply open fire on the entire school. Thus, A.B.'s offenses were not allied offenses of similar import because his conduct did not involve a single target, but instead his expressed intent was to harm each of the 12 individuals he included on the list.

### *Separate Animus*

{¶20} A.B. asserts that the report of the hit list "spread from [him] to a fellow student; to the 12 individuals identified in the threat; and then to the Mariemont community." He argues that the report of the hit list cannot be a separate identifiable

harm just because the threat was disseminated to the Mariemont community.

{¶21} "Animus," as contemplated by the merger statute, means "purpose, or more properly, immediate motive," and "requires us to examine the defendant's mental state in determining whether two or more offenses may be chiseled from the same criminal conduct." *State v. Bailey*, 2015-Ohio-2997, ¶ 86 (1st Dist.). We determine the animus, one's immediate motive or purpose, by dissecting the facts and circumstances in evidence, including the means used to commit the offense. *Id.*

{¶22} A.B. never refutes he listed 12 individuals in the hit list he authored. In fact, he told the police that it was not the school in general, but the specific people on his hit list who deserved the punishment he had planned for them. Therefore, A.B.'s purpose or immediate motive was to harm each of the individuals he named on his hit list. The complaining witnesses learned of A.B.'s plan to shoot, kidnap, or rape them and to carry out that harm at the school, which led to law enforcement disseminating to Mariemont High School and its community that it had intercepted A.B.'s plan. The record supports that the offenses were committed with a separate animus.

*Whether the Offenses Were Committed Separately*

{¶23} The State concedes, and the record supports, that the act was not committed separately. However, this court need only find that one of three of the *Ruff* factors are present, so this concession by the State does not affect the outcome.

{¶24} Accordingly, we overrule A.B.'s sole assignment of error.

### III. Conclusion

{¶25} A.B. threatened to commit separate acts of violence against each of the 12 individuals he included on his hit list and thereby caused each of the individuals included on the list alarm when they learned of A.B.'s plan to harm them. A.B. expressed different reasons for including each of the individuals on the list and he

tailored the specific acts of violence he intended to cause each of the individuals on the list to fit the specific infraction A.B. believed each had victim had committed. We hold, therefore, that the 12 counts were dissimilar in import or significance, and each was committed with separate animus. Accordingly, we affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P.J.,** and **NESTOR, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.